[Civ. No. 7854.  Third Dist.  July 31, 1951.]

Guardianship of the Person and Estate of IDA M. E. THRASHER, an Incompetent Person. DEPARTMENT OF MENTAL HYGIENE OF THE STATE OF CALIFORNIA, Appellant, v. OSCAR F. THRASHER, as Guardian, etc., Respondent.

Ariel C. Hilton for Appellant.

T. B. Scott and Elmer L. Winger for Respondent.

THE COURT.—This is an appeal from orders settling the fourth annual account of Oscar F. Thrasher as guardian of the person and estate of Ida M. E. Thrasher, an incompetent person, and overruling the objections of the Department of Mental Hygiene of the State of California to the account and

denying its petition to reopen the first, second and third accounts of the guardian.

Oscar F. Thrasher is the husband of the incompetent and the purpose of the objections and petition to reopen the accounts was to disallow the sums charged by him as guardian against the estate for the care, support and maintenance of the incompetent at the Stockton State Hospital on the ground that as her husband he is liable by statute for her support and should not be permitted to avoid this liability and deplete her estate by charging the full cost of the hospital care and maintenance of the incompetent to her estate.

Mrs. Thrasher was committed in 1943 and ever since has been and still is a patient at the Stockton Hospital. Her husband paid for her support at the hospital until January 2, 1945, when he obtained letters of guardianship. On May 9, 1945, an inventory and appraisement of her estate was returned and filed, the appraisement being $17,236. No mention was made as to whether it was community or separate property. A portion of the real estate was sold to Modesto City School District for $4,600 and the sale was approved. In the guardian's first annual account filed April 12, 1946, he claimed one half of the sale money, to wit: $2,300, as belonging to the incompetent's estate and the other one half for himself on the ground that the property sold was community property. Of the $2,300 turned into the estate, the guardian claimed and was allowed $740 to reimburse him for money he personally previously had paid for her support at the hospital. The court also gave the guardian $250 as a fee to be paid when there was sufficient money in the estate to pay it. In his second annual account he claimed and was allowed $580 to reimburse him for money he personally paid for her support and the court allowed a guardian's fee of $125 to be paid when the estate had sufficient money. The Department of Mental Hygiene filed objections to this second annual account on the ground that the $580 for her support should not come out of her estate, her support being the personal liability of the husband. His third annual account, filed April 30, 1948, showed a total received of $51.35 and $620 paid Stockton State Hospital for 15 months' support for the incompetent. Again objections were interposed to the allowance of the $620 for her support on the ground $740 had been allowed by the first account and $580 in the second account, and that the husband had an income in excess of $300 a month and was financially able to support his wife. The objections were

disallowed. Again a fee of $50 was allowed the guardian, to be paid when the estate had the money. The fourth account was filed April 20, 1949, showing $480 was for her support. Objections were again interposed and a petition filed that the first, second and third accounts be reopened on the same grounds, viz., that the husband, and not the estate of the incompetent wife, was liable for her support.

Appellant Department of Mental Hygiene (hereinafter referred to as the department) states that the question to be determined is as follows: Whether the husband who is providing for the care and maintenance of an incompetent wife committed to a state hospital, may, as guardian of her estate, approve claims for this support, submitted by himself as husband to himself as guardian, thereby charging her estate for her care, and avoiding his own statutory liability as husband for the support of his wife.

Respondent insists that appellant has incorrectly stated the question on appeal, and respondent states: ''This statement of the issue begs the question. By its use of the term 'statutory liability' it assumes that to be a matter of law which is the very point at issue—whether there is in this case any liability, statutory or otherwise, on the part of the husband for the support of his wife.''

We deem it proper to state at the outset that it is not only the right, but it is the duty, of the department to safeguard the welfare of an incompetent person committed to its care. This duty has been aptly expressed in the *Estate of O'Donnell*, 85 Cal.App.2d 1 [192 P.2d 94] (hearing by Supreme Court denied), in which, on an appeal by the department, the appellate court ordered that an allowance of $4,000 to an heir-hunting bureau be stricken from the order of the probate court. The court said at page 13:

''But the department stands in another and far more important light. O'Donnell has been legally committed to its care. The department is the custodial guardian of the person of O'Donnell. The department in this case is trying to give its ward the protection which should have been given him by his guardian, the attorney for his guardian, and the trial court. No niceties of just who is appealing should deprive the incompetent of his right to the protection of the court. Even if there be left plenty of funds to care properly for O'Donnell, whatever length his life may be, there is a duty, too, on the courts to preserve his estate for those who may succeed to it on his death, whether it be heirs or the state.''

Appellant first contends that a husband is primarily responsible for the support of his wife, and cites section 155 of the Civil Code which provides that the husband and wife contract towards each other obligations of support, and also cites a number of California cases which emphasize the liability of a husband for the support of his wife. Respondent, in reply, states that he does not question the general law with reference to "the liability of a husband to support his wife under ordinary circumstances, or under circumstances arising out of divorce proceedings," but he asserts that a different rule governs in the case of a wife who has been declared incompetent and committed to a mental institution, and who possesses estate of her own.

Appellant next contends that the husband of an incompetent wife has a statutory liability for her support in a state hospital for the mentally ill. Appellant asserts that section 6650 of the Welfare and Institutions Code establishes the statutory liability of a husband for the support of his incompetent wife. This section, as amended in 1947, reads:

"The husband, wife, father, mother, or children of a mentally ill person or inebriate, the estates of such persons, and the guardian and administrator of the estate of such mentally ill person or inebriate, shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a state institution for the mentally ill or inebriates. The husband, wife, father, mother, or children of a mentally ill person or inebriate, and the administrators of their estates, and the estate of such mentally ill person or inebriate, shall be liable for his care, support, and maintenance in a state institution of which he is an inmate. The liability of such persons and estates shall be a joint and several liability, and such liability shall exist whether the mentally ill person or inebriate has become an inmate of a state institution pursuant to the provisions of this code or pursuant to the provisions of Sections 1026, 1368, 1369, 1370, and 1372 of the Penal Code."

In 1937 when the sections of the Welfare and Institutions Code were first enacted, section 6650, based on former Political Code section 1276, provided in the part pertinent to our question that:

"The husband, wife, father, mother, or children of an insane person or inebriate, . . . or the estate of such insane person or inebriate, . . . shall be liable for his care, support, and maintenance in a State hospital to which he has been committed or transferred."

In 1941 this section was amended by Statutes of 1941, chapter 916, section 1, page 2503, to provide in the pertinent portions that:

"The husband, wife, father, mother, or children of an insane person or inebriate, . . . and the administrators of their estates, and the guardian and/or administrator of the estate of such insane person or inebriate, shall be liable for his care, support, and maintenance in a State institution to which he has been committed or transferred under an original commitment. The liability of such persons and estates shall be a joint and several liability except that where the insane person or inebriate has an estate such estate shall be exhausted before liability passes to the relatives."

In 1943 the section was again amended by striking out the provision that the estate of the incompetent must be exhausted before liability passes to the relatives, and returning to the former wording that "the liability of such persons and estates shall be a joint and several liability." Statutes 1943, chapter 1052, section 1, page 2991, effective August 4, 1943.

Appellant then contends that the liability of a husband for the support of his wife continues without regard for her possession of independent means.

In an annotation in 18 American Law Reports 1131, it is stated that the general rule is that the primary duty of support of the wife and family rests upon the husband, and he is not relieved of that duty merely because the wife may have a separate estate or means of her own available for her support. Cited in said annotation are *Meyer's Estate,* Myrick, Probate Court Report 178, and *Shebley* v. *Peters,* 53 Cal.App. 288 [200 P. 364].

In *Meyer's Estate,* the husband applied for an order on the guardian of the wife, who was insane, to refund out of her estate the amount which he had expended for her support, since she had a large estate, although he was also wealthy. The court, in denying the application, said: "It is the duty of the husband to maintain the wife, whether she be sane or insane; and while he has the ability so to do, resort cannot be had to her estate."

In *Shebley* v. *Peters, supra,* which was an action for death of a husband and father, the Supreme Court, in denying a hearing, said at page 293: "Such support it is the right of every wife and minor child to receive from the husband and father, even if they are not dependent upon him at all, but have ample means of their own."

And in *Davis* v. *Davis*, 65 Cal.App. 499 [224 P. 478], the court said at page 501: "It is the law that every wife is entitled to demand of her husband a support in accordance with his station in life, even if she be not dependent upon him at all and although she has ample means of her own."

.Appellant contends further that before a husband may be relieved from the support of an incompetent wife it must be shown .that he is unable himself to provide suitably for that support, and appellant quotes section 1505 of the Probate Code which reads:

."If a husband is unable to provide suitably for the support and maintenance of a wife over whose estate a guardian has been appointed by reason of her incompetency, the expense of providing such support or maintenance may, to the extent necessary, be charged against and defrayed out of such estate, as directed by the court or as approved by the court in settling the accounts of the guardian; for this purpose the guardian may sell or mortgage or give a deed of trust·upon any of her property as hereinafter provided."

The provisions of said section 1505 seem simple and clear, so it is not surprising that there are no decisions construing it.

Respondent in reply argues that appellant's argument and authorities "do not deal with the kind of situation as exists in the case at bar" and that Probate Code section 1505 is not controlling. Respondent asserts that "our law specifically provides that the support and maintenance of a person committed to a State Mental Hospital shall be paid from the estate of the person so committed." Respondent quotes the first paragraph of section 6655 of the Welfare and Institutions Code which reads:

"If any person·committed to a State mental hospital has sufficient estate for the purpose, the guardian of his estate shall pay for his care, support, maintenance, and necessary expenses at the mental hospital to the extent of the estate. Such payment may be enforced by the order of the judge of the superior court where the. guardianship proceedings are pending. On the filing of a petition therein by the department, showing that the guardian has failed, refused, or neglected to pay for such care, support, maintenance, and expenses, the court, by order, shall direct the **payment** by the guardian. Such order may be enforced in **the same** manner as are other orders of the court."

. Respondent then points out that the second paragraph of said section directs the guardian to sell any property owned

by the incompetent person to pay for the latter's maintenance and expenses at the mental hospital. Respondent then goes on to argue that under said section 6655 the guardian is not only directed to use the estate of the incompetent person for the latter's support and maintenance, but that he is directed to do so to the extent of such estate "if such insane person has been declared chronically insane." He then quotes the third paragraph of section 6655, which reads as follows:

"Payment for the care, support, maintenance, and expenses of a person at a State hospital shall not be exacted, however, if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital. If a certificate from the medical superintendent of the State hospital in which the person is confined as a patient is filed in the office of the county clerk with the papers in the guardianship proceedings of the patient, in which certificate the medical superintendent states that the patient is suffering from a chronic form of insanity, and that in his opinion a recovery is beyond reasonable hope and that the patient will in all probability continue to be a charge in a State hospital until death, such certificate shall be prima facie evidence that the patient is not likely to recover or to be released from the hospital, and the guardian shall pay the amount due for his care, support, maintenance, and expenses at the hospital and such other charges as are allowed by law out of any moneys of the estate in his possession."

Respondent asserts that under the provisions of said section 6655 "the guardian is authorized to expend all of the estate of an incompetent providing the latter is chronically insane. So long, therefore, as the guardian is administering the estate in accordance with this section, the State Department of Mental Hygiene has neither a duty nor a right to interfere, even if all of the incompetent's property is expended for her support and maintenance." In answer to appellant's statement that the incompetent wife here has a life expectancy of 25 years and that at the present rate of expenditure this estate will be exhausted in less than one third of that time, leaving the state in the probable position of having to provide the full support of the incompetent, respondent argues that this argument is fallacious because section 6650 of the Welfare and Institutions Code gives the state the power to obtain continued support for said incompetent from respon-

sible relatives after the depletion of the estate of the incompetent. Respondent states further that "the position which appellant seeks to sustain would result in a freezing of the funds and property of the chronically insane person, while forcing her relatives to defray her expenses at an institution."

To summarize the contention of respondent, as applied to the undisputed facts of the instant case, it is that, although respondent husband has a gross monthly income in excess of $400, that he has no dependents other than his insane wife, that she has a life expectancy of 25 years and that at the present rate of expenditure for her support her estate will be exhausted in approximately eight years, the department has no right to prevent the depletion of her estate by objecting to the withdrawal from her guardianship estate of the amount required to be paid to the state for her maintenance and has no right to insist that respondent husband, who has the unquestioned ability to do so, fulfill his duty and statutory obligation to support his wife.

We are unable to agree with the contention of respondent. All of the statutory provisions in all of the codes must be read together and harmonized if possible. ▌ As stated in *In re Porterfield*, 28 Cal.2d 91, at page 100 [168 P.2d 706, 167 A.L.R. 675] : "It is a well-recognized rule that for purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute. [Citing cases.]"

▌ As we have hereinbefore pointed out, it is the undoubted duty of the husband to support his wife even though she has estate of her own. ▌ This obligation does not cease when she is adjudged insane or when a guardian of her estate is appointed. Section 1505 of the Probate Code specifically provides that if a husband is unable to provide for the maintenance of a wife over whose estate a guardian has been appointed by reason of her incompetency, the expense of her maintenance may to the extent necessary be defrayed out of the guardianship estate. Section 6650 of the Welfare and Insitutions Code provides that the husband, wife, father, mother, or children of a mentally ill person, or the guardian of his or her estate, shall be jointly and severally liable for the maintenance of such person in the state institution. Section 6655 provides that if any person committed to a state mental hospital has sufficient estate to pay for his maintenance the guardian shall pay for such maintenance to the extent of the estate; and said section provides further that payment shall

not be exacted if there is likelihood of patient's release from the hospital and the payment will reduce his estate to the extent that he will become a burden upon the community, and also that if the medical department certifies that the patient is not likely to recover or be released from the hospital, the guardian shall pay for his maintenance at the hospital out of his estate.

We do not believe that the construction placed upon section 6655 by respondent is either required or justified. We do not believe that it was the intention of the Legislature to overrule or ignore the provision of the Civil Code establishing the fundamental rights and duties of marriage, the provisions of the Probate Code establishing the rights of wards and the duties of their guardians to protect their interests, the provision of the Welfare and Institutions Code establishing various sources from which the state may secure payment of the hospital care for incompetents, and look only to one section of the Welfare and Institutions Code as providing the one source from which an incompetent's care may be paid.

All of these sections must be considered together, and as stated by our Supreme Court in *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634 [122 P.2d 526], at pages 639 and 644: "... in construing a remedial statute, like a law concerning the rendition of charitable aid to indigents and recovery therefor, reason must have its just proportion, and in interpreting the expressions employed, the court is free to study the history and purpose of the enactment and the previous state of the legislation on the subject, as well as other statutes *in pari materia* and the benefits sought to be provided. (*People* v. *Earl,* 19 Cal.App. 69, 71-72 [124 P. 887].)"

"... it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication. (*Lowe* v. *Yolo County Consolidated Water Co.,* 8 Cal. App. 167, 174 [96 P. 379]; 23 Cal.Jur. 782, sec. 158.)"

We believe that the reasonable and proper construction of all of the applicable sections is that the husband of a wife who has been committed to a mental institution is primarily liable for her maintenance there to the extent of his financial ability to pay for it; that if she has estate over which a guardian is appointed, he may not draw upon such estate for her maintenance so long as he has the financial ability to pay for same; that it is not only the right but it is the duty

of the Department of Mental Hygiene to protect and preserve the estate of a person legally committed to its care; that the Welfare and Institutions Code provides the means and method by which the state may receive payment from the insane person's estate, but this in no way releases the husband from his primary obligation, nor does it prevent the department from making proper objections in the guardianship proceeding to the shifting of said obligation to the guardianship estate.

While there is no decision in California on the precise point involved, a similar contention to the one made by respondent here was rejected by the Supreme Court of Indiana in *Aurora Casket Co.* v. *Ropers,* 117 Ind.App. 684 [75 N.E.2d 680], where the court said, at page 682: "This statute did not expressly provide that such provision should relieve the husband for liability of support under such circumstances, nor can we read such intention of the legislature into such statute by implication."

In *In re Fox' Will* (1937), 275 N.Y. 604 [11 N.E.2d 777], a wife was committed to a state hospital. For some time the husband paid for her support, but later fell into arrears for eighteen months. The husband was appointed "committee" (guardian) of the estate of the incompetent wife and thereafter he paid for her support out of her estate, while he personally paid nothing. He died and a new committee for the incompetent asked that the estate of the deceased husband be surcharged with the amount paid out of her estate. The court charged his estate as requested and the order was affirmed.

*In re Hutcherson's Guardianship Estate,* 239 Mo.App. 801 [199 S.W.2d 899], is identical. A wife was committed to a state hospital and her husband was appointed guardian of her estate. He filed an inventory showing her estate to be of the value of $5,086.60, and the court directed that $30 a month be paid out of her estate for her support. The husband, as guardian, filed seven annual accounts and in each he took credit for the amount paid by him to the state hospital for the support of his wife. The husband died and his daughter was appointed administratrix of his estate. Cora Mueller was appointed as a new guardian of the person and estate of the incompetent. The administratrix of the estate of the deceased husband filed a final account of the deceased husband as guardian in which she took credit for two items of $90 each, paid by the deceased guardian out of the incompetent's estate for her support. The new guardian filed exceptions to

each of the seven annual settlements made by the husband as guardian and also excepted to the final account, such exceptions being directed toward the items for the support of the incompetent wife at the state hospital. The probate court denied the exceptions, but the circuit court sustained the exceptions and surcharged the deceased husband's estate with $2,703.35. The court of appeals affirmed the decision of the circuit court, and in conclusion said:

"In this case the trial court [circuit court] found that the guardian was at all times able to pay for his wife's support at the state hospital. There was ample evidence to support this finding. Such being the case, the court properly surcharged his settlement with the amounts expended from the wife's separate estate."

Among other cases the court cited *In re Fox' Will, supra.*

Appellant next contends that the annual or intermediate accounts of a guardian may be reviewed and corrected at any time before final settlement, and respondent does not dispute the fact that the probate court has such power, so we need not prolong this opinion by discussing that question. Nor, in view of the decision in *Estate of O'Donnell, supra,* can there be any doubt as to the right of appellant, Department of Mental Hygiene, to file its objections to the fourth annual account and its petition to reopen the first three accounts and to disallow the sums charged therein for the hospital care of the incompetent.

No other points raised require discussion.

For the reasons hereinbefore set forth we believe that the court erred in making its orders overruling appellant's objections to the guardian's fourth annual account and in allowing such account, and in denying appellant's petition to reopen and modify the first, second, and third accounts of said guardian. Said orders are reversed, with directions to the probate court to enter appropriate orders in accordance with the views herein expressed.

A petition for a rehearing was denied August 27, 1951, and respondent's petition for a hearing by the Supreme Court was denied September 27, 1951. Schauer, J., voted for a hearing.