41 Cal.2d 166 (1953)
Estate of JOHN C. FERRALL, Deceased. ALEXANDER C. HAMILTON, as Executor, etc., Respondent,
v.
BANK OF AMERICA, as Cotrustee, etc., et al., Appellants.
L. A. No. 22204. 
Supreme Court of California. In Bank. 
June 30, 1953.
 Earle M. Daniels, Burdette J. Daniels, Hallam Mathews and Eugene M. Elson for Appellants.
 Potter, Potter & Rouse and Bernard Potter, Jr., for Respondent.
 SHENK, J.
 Separate appeals have been taken by the trustees and the contingent remaindermen of a testamentary trust from an adverse decision in a proceeding brought by the guardian of the beneficiary, an incompetent person, under section 1120 of the Probate Code. The proceeding was brought to compel the trustees to exercise the discretion vested in them to invade the corpus of the trust estate to provide for the "care, needs and comforts" of the beneficiary.
 John C. Ferrall died testate on October 5, 1940. Surviving were his son, George D. Ferrall, his daughter, Mrs. Faye F. Hamilton, the beneficiary of the trust here involved, and three grandsons, the children of George. The will was duly admitted to probate in Los Angeles County and a decree of distribution entered on February 5, 1943. The decree became final.
 The will and the decree of distribution contained the following provisions:
 "(d) After payment of any expenses of management of the trust estate and administering this trust, including the compensation for the services of the trustees, all income from the trust which is available for distribution shall be distributed monthly to and for the use and benefit of my daughter, Faye F. Hamilton, during her lifetime, or unless sooner terminated in accordance herewith. That if at any time the income from the corpus of the trust herein created is insufficient to meet the needs of my daughter, Faye F. Hamilton, then and in that event, in the sole discretion of the trustees herein, the trustees may pay to my said daughter, Faye F. Hamilton, such amounts from the principal or corpus of the trust sufficient to meet her needs, care and comforts. ..."
 "(f) Anything herein contained to the contrary notwithstanding, this trust shall cease and terminate upon the following conditions:"
 "(1-a) Provided my daughter, Faye F. Hamilton, be living, *169 this trust shall terminate upon the death of Alex C. Hamilton, or his divorce from my said daughter, Faye F. Hamilton, in which event all the property held by the trustees herein shall be distributed to my daughter, Faye F. Hamilton, or"
 "(1-b) Upon the death of my daughter, Faye F. Hamilton, this trust shall cease and terminate and all the property held by the trustees under the terms hereof shall be distributed one-half to my son, George D. Ferrall, and one- half to my three grandchildren, George D. Ferrall, Jr., John Charters Ferrall and Frank M. Ferrall, share and share alike."
 At the time of the execution of the will and prior thereto Mrs. Hamilton was afflicted with an incurable disease known as multiple sclerosis. Her condition was known to the testator. After his death her condition became worse and in January, 1942, she was placed in a sanitarium. Thereafter she was bedridden most of the time and required medical and nursing care. In 1948 she was declared to be an incompetent and her husband, Alex C. Hamilton, was appointed guardian of her person and estate.
 On two previous occasions the trust here involved has been before the courts. In the first action Mrs. Hamilton sought to have the trust declared invalid by reason of the inclusion therein of clause (1-a) above set forth on the ground that it was an invitation for divorce proceedings between herself and her husband, was against public policy and rendered the entire trust provisions of the will void. Her efforts in that proceeding, if successful, would have resulted in the distribution to her of one-half of the estate freed from the trust requirements. She was unsuccessful. (Hamilton v. Ferrall (June 8, 1949), 92 Cal.App.2d 277 [206 P.2d 663].)
 In June, 1947, Mrs. Hamilton petitioned the court to direct the trustees to make payments to her of $450 per month from income and corpus for her "needs, care and comforts," and to reimburse her from that source for sums theretofore paid by her for that purpose from her personal funds. The trial court in that proceeding found that it was the intention of the trustor to provide for the maintenance of his daughter from corpus; that $400 per month was a reasonable sum to be paid for that purpose, and ordered the trustees to pay to her from that source that sum per month, commencing June 10, 1947, and until further order of the court.
 On appeal that judgment was reversed on the ground that before the court could intervene to review and control the *170 action of the trustees in their administration of the trust there must be pleadings, proof and findings of fraud, bad faith or abuse of discretion on their part; and that no such pleading, proof or finding had been made. (Estate of Ferrall (July 1, 1949), 92 Cal.App.2d 712 [207 P.2d 1077].)
 While the appeal from the latter judgment was pending the guardian caused a demand to be served upon the trustees. The demand stated that the condition of the beneficiary had greatly deteriorated; that she required $475 per month for her care at the sanitarium; that prior to June, 1947, she had disposed of most of her personal assets; that neither she nor her husband was in a position to defray the costs and expenses necessary to provide for her care, needs and comfort; demanded that the trustees "exercise" their "discretion" as provided by the terms of the trust to invade the corpus for that purpose; and that to that end they enter upon an immediate investigation of the facts and of the condition and requirements of the beneficiary.
 This demand was served on the trustees on January 31, 1949. On February 11, 1949, the trust officer in charge of the Ferrall trust at the Bank of America advised the guardian by letter that the trustees were not in a position to take any action on the demand until the questions involved on the appeal then pending were finally decided by a court of last resort. He requested that Mr. Hamilton furnish data as to the guardianship assets and disbursements from its inception, a statement as to his income, expense and financial status, and a financial statement of Hamilton's Men's Shop, Inc. The stock in that corporation was entirely owned by Mr. Hamilton and was apparently community property. About a year later Mr. Hamilton complied with this request. Thereafter the trustees determined that the beneficiary's expenses were being currently paid at the sanitarium; that she was not in need and there was no duty upon them to invade the corpus; that the primary obligation for her support and maintenance rested on her husband, and that he was paying her bills.
 In May, 1950, the trustees announced their refusal to comply with the demand. The present proceeding was then commenced in August, 1950, by the beneficiary, through her guardian, under section 1120 of the Probate Code by the filing of a supplemental petition to have it determined in accordance with the terms of the demand: (1) that the necessary expense for the care of the beneficiary is and has been since January 31, 1949, the sum of $475 per month; (2) that the *171 beneficiary, prior to January 31, 1949, had expended and disposed of all of her personal assets, and that her only income from the trust estate is approximately $50 per month; (3) that by the terms of the will of the decedent the beneficiary is entitled to receive $475 per month from the trust estate and that resort to the corpus of the trust estate to that extent should be had, and (4) that the trustees did exercise their discretion and did refuse to invade the corpus for the beneficiary's needs, but that in so acting the trustees abused their discretion and acted in bad faith.
 It was also prayed that the court instruct and direct the trustees to pay to the guardian of the beneficiary the sum of $475 per month "and to resort to and invade the corpus of the trust to such extent as may be necessary or required from January 31, 1949, until further order of the court."
 The trustees filed a joint answer to the petition for instructions wherein they alleged among other things that, pursuant to the demand made upon them on behalf of the beneficiary, they had made a full and complete investigation of the matters and things set forth in the demand and that following their investigation they did, on June 15, 1950, exercise their discretion and refused to invade the corpus of the trust estate, for the care and maintenance of the beneficiary. They alleged that in so doing they did not act in bad faith or abuse their discretion, and alleged that they acted in good faith and with reasonable and prudent judgment.
 At the trial the following facts were stipulated to be true: that the testator knew that his daughter was afflicted with a progressive disease at the time he executed his will in 1938 and at the time he died in 1940; that in January, 1942, the condition of the beneficiary was such that she had to be placed in a sanitarium; that she had required medical and nursing care ever since; that during most of the period since 1942 she was completely incapable, physically and mentally, of handling her own affairs; that the average expense for her needs, including sanitarium charges for room and board, nurses, medical care and supplies, for the period January 31, 1949, to May 15, 1950, was and is $400 a month; that during that period Mrs. Hamilton had an income of $128.83 per month, including $82.50 from the trust estate, $38 from certain insurance, and $8.33 as dividends from certain stock, but that her available income averaged only $79.23 per month because of certain payments for attorneys' fees in connection with prior litigation; that her sole remaining personal assets included *172 $70.70 in cash and 50 shares of Union Oil Company stock; and that the value of the corpus of the trust estate was $27,000. It was shown at the trial that this $27,000 consisted of negotiable and liquid assets.
 Because of the issue whether the trust instrument contemplated that the beneficiary should be in actual need before the trustees were required to invade the corpus, evidence in the present proceeding was introducd as to possible community property earnings or community property interest of the beneficiary and her husband. The court did not make a finding that the husband had or had not ability to pay. It did find that during 1949 he had received $12,315.70 from Hamilton's Men's Shop, Inc., and that this sum had been returned as salary in the federal and state tax returns of Mr. and Mrs. Hamilton for that year.
 The court construed the language of the trust instrument to indicate the testator's intention that the only condition imposed by him on the invasion of the corpus of the trust was whether the income from the corpus was "insufficient to meet the needs of my daughter." The court found that the trustees had decided that the income from the corpus was insufficient for those purposes. It also found that there was no express or implied requirement in the trust that the trustees consider either the individual income of the beneficiary, her personal assets or her other resources in determining her needs; and that in refusing to invade the corpus for the purpose of paying any portion of the cost or expense of providing for the needs, care or comfort the trustees had abused their discretion; that they did not act in a state of mind in which it was contemplated they would act by the testator; and that they had acted beyond the bounds of a reasonable judgment.
 Judgment was entered ordering the trustees to determine, in the exercise of their discretion, the amounts necessary and sufficient, commencing January 31, 1949, which was the date of the demand, to meet, provide and pay for the necessary needs, care and comfort of the beneficiary; to determine the amount of net income distributed or distributable to her; and without regard to or consideration of her separate property or income or her interest in the community property or other sources of income, to invade the corpus and pay therefrom amounts representing the difference between the net income and the amounts they found necessary to provide for *173 her proper care, needs and comfort. The trustees and the remaindermen filed separate appeals.
 The contentions of the appellants are, first, that the decision of the trial court is contrary to the law established in the prior litigation, and secondly, that the evidence is insufficient to support the finding that the trustees were guilty of an abuse of discretion in refusing to invade the corpus as required by the demand served upon them.
 As to the first point the appellants rely especially on the language of the court in Estate of Ferrall, supra, 92 Cal.App.2d 712, where it is said at pages 715-716: "As above shown, the decree creating the trust provided that 'if at any time the income from the corpus ... is insufficient to meet the needs of my daughter, Faye F. Hamilton, then and in that event, in the sole discretion of the trustees herein, the trustees may pay to my said daughter, Faye F. Hamilton, such amounts from the principal or corpus of the trust sufficient to meet her needs, care and comforts.' Under that provision a court is not deprived of power to determine the fact as to whether the income from the corpus is insufficient to meet the needs of Mrs. Hamilton. By that provision, however, the matter of determining the amounts to be paid from the corpus, in the event that the income is insufficient to meet her needs, is left to the sole discretion of the trustees. Section 2269 of the Civil Code provides: 'A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust.' An absolute discretion, as to the amounts to be paid from the corpus, was conferred by the trust provisions herein. An absolute discretion, exercised in good faith by a trustee, cannot be controlled by a court on considerations going to the soundness of the discretion so exercised."
 It is therefore contended that it has been decided that it is within the "sole discretion of the trustees" to determine the amounts to be paid from corpus and that the determination of the trustees is binding on this appeal.
 There is nothing in the former decision which would imply that the "sole discretion" vested in and exercised by the trustees in this case is beyond court review. [1] If it were exercised fraudulently, in bad faith or in an abuse of discretion, it is subject to such review. [2] Whether good *174 faith has been exercised, or whether fraud, bad faith or an abuse of discretion has been committed is always subject to consideration by the court upon appropriate allegations and proof. (Estate of Marre, 18 Cal.2d 184 [114 P.2d 586]; Estate of Heard, 107 Cal.App.2d 225 [236 P.2d 810, 27 A.L.R.2d 133]; Estate of Smith, 23 Cal.App.2d 383 [73 P.2d 239].) [3] The Restatement of Trusts states the general rule that "It is against public policy to permit the settlor to relieve the trustee of all accountability to the courts." ( 187, comment k.) The appellants contend, however, that in the present case the evidence establishes that as a matter of law the trustees exercised their discretion in good faith and that they are not otherwise accountable for their actions.
 The determination whether the evidence is sufficient to support the finding of the trial court that the trustees have been guilty of an abuse of discretion requires an inquiry into the intentions of the settlor in providing for his daughter as he did, and an examination of the conduct of the trustees in the administration of the trust.
 It was unquestionably the intention of the settlor that one-half of his estate be set aside in trust for the benefit of his daughter during her lifetime. He made an outright gift to her of the income from the trust but the gift to her of the corpus was conditional. Had he intended a gift of corpus as well as income he could have done as he did with reference to his son and grandchildren to whom bequests were made without the imposition of a trust. It is beyond question that the settlor intended to provide, and did provide, that no portion of the trust estate should pass to the hands of Alex C. Hamilton, the beneficiary's husband. This is readily apparent from the terms of clause (1-a) of section II of the will wherein the settlor provided that if his daughter be living the trust should terminate upon the death of her husband or his divorce from her, in either of which events "all the property held by the trustees herein shall be distributed to my daughter." To make certain that Mr. Hamilton should share no interest in the trust estate, clause (1-b) followed providing that "Upon the death of my daughter, Faye F. Hamilton, this trust shall cease and terminate and the property held by the trustees under the terms hereof shall be distributed one-half to my son George D. Ferrall, and one-half to my three grandchildren," sons of George, share and share alike. [4] Under the terms of the trust *175 it was clearly intended that Alex C. Hamilton should not obtain an interest in the corpus and also that the only contingencies upon which Faye Hamilton would be entitled to a gift of the entire corpus were those by which her marriage to Alex C. Hamilton was terminated. By no process of reasoning or construction of the trust instrument could it properly be concluded that the settlor intended that during the life of his daughter and the continuance of her marriage Mr. Hamilton should be relieved of the responsibility for the maintenance of his wife. This primary responsibility is provided for in section 155 of the Civil Code as follows: "Husband and wife contract towards each other obligations of mutual respect, fidelity, and support." [5] It is the duty of the husband to support his wife even though she has an estate of her own. (Guardianship of Thrasher, 105 Cal.App.2d 768, 776 [234 P.2d 230]; Davis v. Davis, 65 Cal.App. 499, 501 [224 P. 478]; Shebley v. Peters, 53 Cal.App. 288 [200 P. 364]; 41 C.J.S., Husband and Wife, 15, p. 404.)
 The respondent does not question the authorities to the effect that it is the duty of the husband to provide support for his wife even though she may have an estate of her own, or that the court in guardianship matters may refuse to allow payment for the care of an incompetent wife from guardianship funds. But he takes the position that ability to pay on the part of the husband must be shown and, apparently, that the showing of ability to pay devolves upon the party who insists upon the discharge of the husband's legal obligation. [6] But where, as here, affirmative relief is sought on the ground that there has been a shift in the primary obligation of support, it is incumbent upon the one seeking relief to plead and prove facts which would justify such a shift, as an element of his cause of action. (Code Civ. Proc., 1981; see, also, Guardianship of Thrasher, supra, 105 Cal.App.2d 768.)
 [7] The obvious intent of clauses (1-a) and (1-b) was to preserve the corpus of the trust intact for distribution to the remaindermen, all lineal descendants of the settlor, except in the event that the income was insufficient to meet the needs of Faye Hamilton. In construing this latter provision the clear and steadfast intent to withhold benefit of the corpus from Mr. Hamilton must be taken into consideration. Had the settlor intended "needs" to be the total amount required to maintain and support his daughter, Mr. Hamilton would have benefited to the extent of his relief from his *176 primary, legal obligation to support her to the extent of his ability, and there is no showing or finding that he was not able to do so. Obviously, money for actual needs was intended to be taken from the corpus. Since all requirements had been and were being supplied from other sources, namely, by or through Mr. Hamilton, an invasion of corpus for reimbursement to him or the guardianship estate would be directly contrary to the intentions of the settlor and greatly to the prejudice of the remaindermen whose interests the trustees were also bound to safeguard.
 Courts in other states have construed provisions similar to those in the present case. In Matter of Martin, 269 N.Y. 305 [199 N.E. 491], a will provided for the outright gift of the income of a testamentary trust with a conditional gift of the principal to the beneficiary "as she may require for her care, support and comfort, during her natural life." The court concluded that the corpus could be invaded "only in the event that the income from the trust fund supplemented by her independent income shall be insufficient to provide for her proper care, support and comfort." In a similar factual situation the Supreme Court of Rhode Island held that the testator did not intend that the trustees should invade the principal so long as the income and the available resources of the life tenants were sufficient for their comfortable support. (Peckham v. Newton, 15 R.I. 321 [4 A. 758].) [8] In summarizing these and the holdings in other cases it was stated in 2 American Law Reports, Second Series, 1432: "By the weight of authority, unless the language of the trust instrument affirmatively reveals an intention to make a gift of the stated benefaction regardless of the beneficiary's other means, the trustee should consider such other means in exercising his discretion to disburse the principal. ..."
 [9] When we pass to the consideration of the duty of the trustees in the administration of the trust and their conduct in compliance therewith, there is no divergence of authority to the effect that the trust must be administered in accordance with the intentions of the settlor. [10] The rule is well stated in section 187, comment j, Restatement of Trusts, page 488, as follows: "The extent of the discretion conferred upon the trustees depends primarily upon the manifestation of intention of the settlor. ... [11] The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of a reasonable judgment." [12] Even *177 though it is provided that the trustees shall have absolute or unlimited or uncontrolled discretion, the court may interpose if the trustee does not act "in a state of mind in which it was contemplated by the settlor that he would act." (Comment j, p. 489.)
 As to the question whether the trustees here involved acted "in a state of mind in which it was contemplated by the settlor" the evidence shows that the trustees concluded that the settlor intended that the beneficiary's needs be her actual needs and that they took into consideration Mr. Hamilton's primary obligation and ability to provide for them. [13] The trustees are entitled to the presumption that they acted in good faith. (Estate of Canfield, 80 Cal.App.2d 443, 451 [181 P.2d 732].) [14] They contend that there is no evidence to the contrary and that the record affirmatively shows as a matter of law that their conduct was proper. This conclusion must be sustained. On February 11, 1949, 11 days after the "notice and demand" that the corpus of the trust be invaded was served upon them, they requested information from Mr. Hamilton to establish the claim made by him as guardian. While awaiting this information they made an independent investigation and concluded that the obligations of the beneficiary were being met and that she was receiving adequate medical care and treatment. It was more than a year after their request for information that Mr. Hamilton supplied financial data. There was no showing by him that any medical bills remained unpaid or that he would be unable to provide his wife with medical care and treatment in the future. For aught that appears in the record Mr. Hamilton provided for his wife's maintenance from the time of their marriage until she became ill. And there is positive and undisputed proof that the costs and expenses of his wife's care and maintenance after she became ill were paid. Despite the request of the trustees, Mr. Hamilton failed to substantiate the allegations of the "notice and demand." The trustees were justified in concluding that the daughter was not in actual need and that the corpus of the trust should not be disbursed in payment of her expenses. Under these circumstances the conclusion is inescapable that on the facts furnished to them or within their knowledge from their own investigation the trustees were not guilty of an abuse of discretion in their refusal to invade the corpus for the purpose demanded. They made a reasonable investigation *178 and did all that was required of them as fiduciaries to carry out the terms of the trust.
 The judgment is reversed.
 Gibson, C.J., Traynor, J., and Spence, J., concurred.
 CARTER, J.
 I dissent.
 The more persuasive authority holds that where words such as those here used are involved, the amount required to be paid to the beneficiary of the trust is computed without consideration of his other sources of income and certainly not the resources of the husband of the beneficiary here. It is said: "It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. Where the trustee is directed to pay to the beneficiary or to apply for him so much as is necessary for his maintenance or support, the inference is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources." (Scott on Trusts, 128.4; emphasis added.) There being such an inference, the probate court could and did draw it and hence there is sufficient evidence to support its order.
 It is not to be supposed that a testator would intend that a beneficiary generally, or intended here that her husband should lead a useless, idle life thus producing no independent income. That, however, is precisely the result if consideration must be given to independent resources. The natural tendency will be for the beneficiary or her husband, to eschew lucrative endeavor because every penny earned will be a penny lost as beneficiary of the trust. At least it is a reasonable inference that the testator did not have such an intention. As the court said in the leading case of Holden v. Strong, 116 N.Y. 471 [22 N.E. 960, 961]: "We do not understand that, in order to receive the benefit of the provisions of the will, it is necessary for him [beneficiary] to remain idle, and refrain from all personal exertion; neither does the fact that he is frugal and saving, and has accumulated a fund which he has deposited in the bank, deprive him of the right to the support provided for him. The trial court properly held that the trustee was to exercise a sound judgment and discretion as to whether the money necessary for the support and maintenance of the plaintiff should be delivered to him, and he allowed to procure it, or whether the board, clothing, etc., should be purchased and provided for him by the trustee." *179 That case was cited with approval and followed in In re Clark's Will, 280 N.Y. 155 [19 N.E.2d 1001], where it was said (p. 1003): "The will clearly provides for payment by the trustee ... of the entire income from the trust and of so much of the principal in addition thereto as, in the sole judgment of the trustee, shall by it be deemed necessary for every comfort and support of the widow. ... In conformity to that purpose and intent, the trustee is required to furnish every comfort and support for the widow which it may deem in a sound discretion necessary out of income and, if required, out of the corpus, even to the extent of exhausting the entire corpus of the trust, without taking into consideration or account the personal income of the beneficiary from any other source. Holden v. Strong, 116 N.Y. 471 [22 N.E. 960]; Rezzemini v. Brooks, 236 N.Y. 184 [140 N.E. 237]." (Emphasis added.) The Clark case was decided (1939) six years after In re Martin's Will (1933), 269 N.Y. 305 [199 N.E. 491], relied upon by the majority, and the Clark case does not even mention the Martin case.
 To the same effect as the Clark case and the quotation from Scott on Trusts, see Cross v. Pharr, 215 Ark. 463 [221 S.W.2d 24]; Hoops v. Stephan, 131 Conn. 138 [38 A.2d 588]; In re Worman's Estate, 231 Iowa 1351 [4 N.W.2d 373]; Pearce v. Marcellus, 137 N.J.Eq. 599 [45 A.2d 889]; In re Leonard's Estate, 115 Vt. 440 [63 A.2d 179]; and cases collected, Scott on Trusts, 128.4; 2 A.L.R.2d 1383, 1431.
 Finally, the same rule is stated: "It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. The inference is that he is so entitled." (Rest. Trusts, 128e; emphasis added.)
 I would, therefore, affirm the judgment.
 SCHAUER, J.
 I concur in the views expressed by Justice Carter. It further appears to me that the death of the beneficiary, Mrs. Hamilton, provides no ground for avoidance of payment to her estate of the sums which she was entitled to receive while she was living. (See Board of Soc. Welfare v. County of Los Angeles (1945), 27 Cal.2d 81, 86, 88-89 [162 P.2d 630].) I, too, would affirm the judgment.