[Civ. No. 18148. First Dist., Div. One. May 20, 1959.]

MAX ARONSTEIN, Respondent, v. MARGOT ARONSTEIN,
an Insane Person, etc., Appellant.

Richard O. Graw and Howard W. Wayne for Appellant.

Eisler & Rieman and Paul A. Eisler for Respondent.

TOBRINER, J.—This case presents the narrow issue whether the record supports an order that respondent pay $50 per month for support of appellant from whom respondent was divorced upon the ground of incurable insanity.

The relevant facts disclose an unfortunate series of events. Married on April 14, 1949, appellant within six months became ill with tuberculosis which caused her confinement at the Belmont Sanitarium. Upon her release from the sanitarium in June, 1950, appellant again resumed living with her husband, only to suffer a miscarriage in November, 1950. In turn, this difficulty reactivated appellant's tubercular condition, and she was sent to the National Jewish Hospital at Denver, Colorado. While there, appellant became mentally ill; she was then transferred to Kaiser Hospital in Vallejo, California. On February 13, 1952, the Superior Court for the County of Solano committed appellant to the State Hospital for the Insane at Napa, California.

Respondent obtained an interlocutory decree of divorce from appellant on the ground of incurable insanity on September 26, 1955. The final decree, entered October 8, 1956, provided that respondent pay $30 per month to the Department of Mental Hygiene for her support and $5.00 per month to the Social Service Department at the Napa State Hospital for her personal use. The decree also required respondent to designate appellant as the irrevocable beneficiary of a $5,000 life insurance policy on his life which he was to maintain during her lifetime.

After more than five years of confinement, appellant obtained leave from the hospital in March, 1957, and went to live

.. 

496

with her parents. Dr. Kurt S. Brock, as appellant's physician, filed an affidavit stating that during the period of her release appellant required administration of a drug under the supervision of a physician; that her tubercular condition was "arrested"; that she was not "physically or mentally capable of accepting employment."

The 67-year-old father of appellant, appointed her guardian ad litem, has moved for an increase in the support provision of the final decree, stating that appellant's minimum needs call for $125 per month, of which amount $25 is required for medical expenses alone. Respondent, an unmarried man of 42 years of age, employed by the Fairmont Hotel as a headwaiter or captain at the Venetian Room, does not challenge the claimed need for support but contends that he is unable to make such payments.

Upon hearing, the trial court denied appellant's motion for an increase in the payments. Appellant then filed a "Notice of Intention to Move for New Trial." Treating appellant's motion as a motion for reconsideration of the motion to increase, the trial court did, pursuant to respondent's offer to do so, increase the payments from the original $35 to $50 per month. The order of modification provides, likewise, that if appellant is again hospitalized respondent shall, in lieu of the $50 per month, pay $30 per month to the Department of Mental Hygiene and $5.00 per month for appellant's personal use to the Social Service Department of the hospital in which she is confined.

Appellant appeals from the modification order insofar as it fails to provide for more than $50 per month during such periods as she is not hospitalized. Accordingly, we must first define the nature of the obligation owed by a spouse who obtains a divorce upon the ground of incurable insanity; thereafter we must determine whether the trial court applied the proper test for fulfilling that obligation, and finally examine the record to see if it supports the court's order.

Society has been slow to recognize the propriety of a divorce granted on the ground of a spouse's incurable insanity. This reluctance probably stemmed from the concept that a divorce could rest only on "the deliberate misconduct of the defendant" and not on the "impossibility of a functioning marriage." (1 Armstrong, California Family Law (1953) 177.) In Great Britain only in 1937 did the Matrimonial Causes Act of that year provide for divorce upon the ground of "unsoundness of mind," regarded after five years of duration as

incurable. (Encyclopedia Britannica, 1945 ed., vol. 7, p. 458.) It was in the comparatively recent year of 1941 that the Legislature of this state denominated insanity as a ground for divorce (Civ. Code, § 108) and even then posited it upon the condition that the party seeking the divorce allege in the complaint and prove at the trial that there was "reasonable ability to support the insane spouse for the remainder of the life expectancy or that such insane spouse has property sufficient to provide support for the remainder of the life expectancy. . . ." When this condition was declared unconstitutional because it created an arbitrary and unreasonable class discrimination between those of different financial resources (*Dribin* v. *Superior Court* (1951), 37 Cal.2d 345 [231 P.2d 809, 24 A.L.R.2d 864]; *Morganti* v. *Morganti* (1950), 99 Cal. App.2d 512 [222 P.2d 78]), the Legislature removed it in 1951. (Cal Stats. 1951, ch. 1580.) The process of relieving the innocent husband or wife from a marriage that no longer existed as a human relationship and which served only as a formality to frustrate the normal life of the sane party was halting and tortuous.

The archaic discrepancy between the divorce granted for alleged fault of the party and that based upon incurable insanity remains in the differing requirements for support of the divorced spouse. While under Civil Code, section 139, the court is empowered to "compel the party against whom the decree or judgment is granted to make such suitable allowances for support and maintenance of the other party . . . as the court may deem just, having regard for the circumstances of the respective parties . . .," section 108 by contrast contains this caveat: "No decree granted on this ground shall relieve the spouse granted the divorce of any obligation imposed by law as a result of the marriage for the support of the spouse against whom the divorce is granted, and the court may make such order for support, or require a bond therefor, as the circumstances require."

The wide latitude of discretion of section 139, permitting the consideration of such factors as the length of the marriage, the respective age of the parties, the degree of fault as to events leading up to the divorce, the separate estate of the ex-spouse seeking support, the need of the former spouse compared to the ability of the other (*Bowman* v. *Bowman* (1947), 29 Cal.2d 808 [178 P.2d 751, 170 A.L.R. 246], and *Thomasset* v. *Thomasset* (1953), 122 Cal.App.2d 116 [264 P.2d

626] ), finds no counterpart in section 108. Instead, that section imposes upon the spouse who obtains a divorce upon the grounds of insanity a primary and irrenounceable duty of support.

*Guardianship of Thrasher* (1951), 105 Cal.App.2d 768 [234 P.2d 230], and *Estate of Risse* (1957), 156 Cal.App.2d 412 [319 P.2d 789], announce the stringent rule. In both the Thrasher and Risse cases the wife became insane and the husband was appointed guardian of the wife's estate. The husband in the Thrasher case, *supra,* sought to charge the expenses of her support to the wife's separate property. The husband in the Risse case, *supra,* sought to charge the wife's support to her half of the community property. In both cases the court required that the husband bear such expense without any contribution from the wife's estate. And *Klinker* v. *Klinker* (1955), 132 Cal.App.2d 687 [283 P.2d 83], in enforcing support by a husband of a wife divorced in Nevada on grounds of insanity, states: ''While the legislatures of many of the states have widened the possibility of divorce by the enactment of statutes authorizing the granting of a divorce on the ground of incurable insanity, . . . no one of such statutes relieves the husband of his obligation to support his former wife. That obligation remains the same after the divorce as it was before and may be enforced in any appropriate proceeding.'' (Pp. 697-698.)

■ Yet there are limits to the obligation of support in section 108. The term ''obligation'' is inchoate; the court must give it content. Obviously it is not absolute; the spouse cannot be saddled with an obligation which is beyond his economic capacity. The section itself states that the divorce granted on the ground of insanity shall not ''relieve the spouse granted the divorce of any obligation imposed by law as a result of the marriage. . . .'' The obligation, then, must relate back to that of the married spouse. This obligation obviously cannot reach beyond the extent of the spouse's ability to meet or pay for the support of the partner. Consequently, we conclude as indeed the parties hereto apparently agree, that the measure of the obligation is fixed in the terms of the spouse's ability to pay.

While no decision squarely makes this test manifest, the cases inferentially accept it and some rest upon it. *Guardianship of Thrasher, supra,* 105 Cal.App.2d 768, in holding the husband liable for support of the incompetent wife and inhibited from depleting her estate by charging against it the

cost of her care, imposed that obligation upon him to the extent of his financial ability, saying: "We believe that the reasonable and proper construction of all of the applicable sections is that the husband of a wife who has been committed to a mental institution is primarily liable for her maintenance there *to the extent of his financial ability to pay for it*; that if she has estate over which a guardian is appointed, he may not draw upon such estate for her maintenance so long as he has the financial ability to pay for same. . . ." (P. 777; italics added.) Following Thrasher, the court in *Estate of Risse, supra,* 156 Cal.App.2d 412, in applying the same principle, alludes to the fact that the husband was *financially able* to meet the charges for the support of the wife and made no showing to the contrary. Thus, "[i]t was pointed out by the Department that the court, in the first instance, had neglected to take any evidence to show that the husband was unable to contribute to his wife's support" (p. 416); the court further states that "neither is there any contention that he was unable, unassisted, to support and maintain his wife in her illness" (p. 417). Finally, *Klinker* v. *Klinker, supra,* 132 Cal.App.2d 687, makes reference to the fact that the "affidavit must be read in connection with the allegations of the complaint. Together, they are sufficient to show the needs of the plaintiff and the ability of defendant to pay." (P. 698.)

 It is clear, then, that the spouse who obtains a divorce upon the ground of incurable insanity must support the insane spouse to the extent of his ability to pay for such support.

 Our next question must be, as above set out, whether the trial court applied this test. Appellant's contention that the trial court rejected the criterion, merging sections 108 and 139, is not sustained by the record. While the court expressed some concern as to the disparity of the rules of the sections, the court expressly related its findings to respondent's ability to pay, saying: "I would be less than honest as far as the record is concerned if I didn't say I was influenced by the argument Mr. Eisler has just made, that if she had been divorced under any other circumstances she would long since now have been cut off from support as far as my philosophy of it is concerned. On the other hand, the statutory admonition is there, . . . . I just don't see the money here, counsel, to support her from this man, to support her the way she should be supported."

Our last inquiry goes to the question whether the finding of the trial court as to respondent's ability to pay is supported by competent evidence. We do not here decide de novo whether appellant's contentions should prevail over respondent's. Our detailed task is to search the record to see if the trial court's determination is supported by the testimony and the evidence. In a similar case involving the question of ability to support in a suit involving the incurable insanity of the wife, the court reiterates the basic rule: "However, since the rule of procedure is settled that a finding of the trial court may not be disturbed on appeal when supported by competent evidence, we must hold that the finding that plaintiff's ability to support the defendant was not proved is a finding on a material question of fact which is just as binding as an affirmative finding that a material issue has been proved." (*Wirz* v. *Wirz*, 96 Cal.App.2d 171 at 177 [214 P.2d 839, 15 A.L.R.2d 1129].)

In the instant case, appellant contends that respondent's gross monthly wage was $360 per month; that he admitted his tips amounted to a figure of $2,100 in the year of 1956; that his federal income tax return shows an investment in vending machines of $8,792.18; that in addition he purchased an automobile for $2,450. She contends that since respondent shows expenses of only $350 per month he could well afford to meet appellant's claim for support of $125 per month.

In substance, the contrary contention of respondent is that his net earnings amount to less than $400 per month; that his expenses reach at least $350 per month; that the investment in vending machines was obtained by a loan; that the car is required for servicing and maintaining the vending machines.

While each of the parties set out in their briefs suggestions of figures and contentions to support their respective positions which are not contained in the record, we cannot consider here such assertions. (*Newman* v. *Board of Civil Service Commrs.* (1956), 140 Cal.App.2d 907 [296 P.2d 41].) We are confined to the record. The affidavit of respondent concerns itself with his 1956 earnings and expenses; the references to 1957 in the transcript are inconclusive; we therefore look to the record to determine whether the showing as to the 1956 earnings and expenses supports the court's ruling.

There is testimony in the record to sustain the court's findings as to the 1956 income and expenses of respondent. As to income, the income tax return attached to respondent's

affidavit shows an adjusted gross income of $5,640.10; the tax on this amount is $868.69, leaving a net of $4,771.41. On a monthly basis, this computes $397.60 per month. Respondent himself, in the "husband's questionnaire" attached to the affidavit of June 24, shows a monthly total income of $396.25. The court's apparent conclusion that respondent's income was in the neighborhood of $400 per month would therefore find substantiation in the evidence.

Likewise, the court's finding that respondent's expenses approximated $350 per month finds support in the record. Respondent testified that his "monthly expenses amount to $350, not counting the $30" paid to his parents. The aforementioned husband's questionnaire totals the expenses at $380.31 per month including "support parents $30." While the obligation to support a needy spouse must take priority over that of support of parents, particularly when there is no showing that the parents are indigent (see 2 Armstrong, California Family Law (1953), 1125, 1145-1146), the monthly living expenses of respondent, as submitted to the court, even deducting the parental support in the amount of $30, reach $350 per month. The court could well concur with respondent's counsel's statement that $350 a month for a bachelor is not "out of line these days." The record, then, substantiates the court's ruling that defendant's limit of ability to pay for appellant's support was no more than $50 per month.

While there was some testimony of respondent that he expected his vending machine business to do better in the future and while it is possible that respondent may increase his earnings in wages and tips to an extent which might increase his ability to pay for the support of appellant, these possibilities cannot sustain a ruling of this court that the trial court's finding is unsupported. In any event appellant may make such future application to the trial court regarding respondent's ability to pay as may be justified by change of circumstance.

We therefore affirm the order of the trial court.

Bray, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 1, 1959, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1959.