[No. B168108. Second Dist., Div. Six. Mar. 29, 2004.]

VENTURA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,
Plaintiff and Respondent v.
JEFFREY C. BROWN, as Trustee, etc., Defendant and Appellant,

STEPHANIE SOLACE, Plaintiff and Respondent, v.
KENNETH NOEL MARINOS, Defendant.

COUNSEL

Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, Michael F. Perrett, Jeanne MacCalden Kvale and Greg W. Jones for Defendant and Appellant.

Bill Lockyer, Attorney General, James M. Humes, Assistant Attorney General, Thomas R. Yanger and Sharon Quinn, Deputy Attorneys General, for Plaintiff and Respondent Ventura County Department of Child Support Services.

Law Office of Hilary Gail Shankin, Hilary Gail Shankin and Coleen P. Gillespie for Plaintiff and Respondent Stephanie Solace.

OPINION

**COFFEE, J.**—Kenneth Marinos (Marinos) has seven children. Six are the subject of this appeal. They range in age from 8 to 15, and are from three different relationships. Marinos has failed to pay child support for approximately 15 years. Following the death of his mother, he became entitled to distributions from her trust. The Ventura County Department of Child Support Services (DCSS) and one of the three mothers, Stephanie Solace (Solace), obtained judgments against Marinos for arrearages and ongoing monthly support. DCSS and Solace seek to satisfy the child support judgments from Marinos' interest in the trust. The trustee, Jeffrey C. Brown (appellant), has not satisfied the child support judgment, arguing that the trial court may not compel him to make trust distributions for child support. We disagree and affirm.

### FACTS

The mothers of Marinos' minor children are Solace (two minors), Chantel Bunch (three minors) and Sheri Marinos (one minor). On January 30, 1989, Solace obtained a paternity judgment by default against Marinos for the support of her minor twins, Alexander and Nicholas Marinos. The trial court ordered Marinos to pay monthly support of $220 per child and to reimburse DCSS for $4,368 in past due support.

*Helen W. Marinos Life Insurance Trust (Irrevocable)*

Marinos and his brother, Daniel Marinos, are the sons of Chris and Helen Marinos, both deceased. On June 27, 1990, Helen Marinos (a widow)

established the "Helen W. Marinos Life Insurance Trust (Irrevocable)" (the Trust). Helen, as grantor, named her adopted sons, Kenneth and Daniel Marinos, as beneficiaries. The Trust gives the trustee broad powers to manage and disburse funds. It contains a spendthrift provision, designed to keep creditors from reaching trust assets.[1]

According to its terms, the Trust is to be divided equally between Helen Marinos' two sons at her death. The shares are to remain in trust and be administered by the trustee to "provide for the proper support, care, maintenance and education of said child." The trustee has discretion to "distribute so much of the net income or principal, or both, of each trust . . . to or for the use and benefit of [the beneficiary], at any time and from time to time." Several years later, the guardian ad litem of the minor children obtained a court order modifying the Trust, removing Rodney Minnier as trustee and appointing appellant as successor trustee. Helen, Kenneth and Daniel Marinos consented to the modification. A conservatorship was later established for the person and estate of Helen Marinos. Santa Barbara Bank and Trust was named as conservator of her estate.

### Enforcement of Child Support Judgments

Helen Marinos died on November 27, 2002. One month later, Solace filed a complaint for injunctive relief in probate court. She asked the court to enjoin distribution of the Trust proceeds to Marinos, referencing her 1989 child support judgment. Several months later, DCSS filed three petitions in the probate action to enforce money judgments it had recovered on behalf of Marinos' minor children. DCSS sought support for 1) Alexander and Nicholas Marinos, the minor children of Stephanie Solace; 2) Amanda Bonvillian, the minor child of Chantel Bunch; and 3) Damion, Cody and Melony Marinos, the minor children of Sheri Marinos. The petitions also requested the payment of monthly ongoing child support. Appellant filed opposition.

At a hearing concerning the payment of child support, the court indicated its tentative ruling was to order appellant to split the Trust into equal shares

---

[1] The spendthrift provision provides in part, "The income or principal of any trust hereunder shall not be subject to transfer by operation of law, and shall be exempt from the claims of creditors or other claimants, and from orders, decrees, levies, attachments, garnishments, executions and other legal or equitable process or proceedings to the fullest extent permissible by law. If any creditor or other claimant attempts by any means to subject to the satisfaction of the claim of such creditor or claimant, the interest of any beneficiary . . . during such time thereafter as the TRUSTEE in its absolute discretion, shall deem advisable, shall not be entitled to receive payments from the trust; provided, however, that during the time payments are so suspended, the TRUSTEE, in its absolute discretion, may pay to or expend for the benefit of such beneficiary as much of the trust net income, . . . as the TRUSTEE deems necessary for the support and education of such beneficiary . . . ."

for Kenneth and Daniel Marinos (pursuant to the terms of the Trust). As to Kenneth Marinos' share, the court intended to grant the petition by DCSS for the payment of arrearages and to make orders regarding future support payments. Counsel for appellant indicated the Trust had already been equally divided. Appellant stated that Marinos' share of the Trust contained approximately $535,000 in liquid assets. Appellant's counsel indicated that $10,000 had been distributed from the Trust for the payment of Marinos' attorney's fees, by a previous court order. Counsel for Solace disputed this amount, claiming it was higher.

The court ruled that "the proper interpretation of [Probate Code section] 15305[, subdivision] (c) is that it's the policy of the State of California that child support obligations be honored and that a trust beneficiary and trustee— and/or trustee cannot utilize spendthrift clauses in a trust agreement to avoid the requisite payment of child support in the State of California." The trial court, pending final calculations by DCSS, ordered a partial payment to Solace of $40,672.48 in "non-welfare" funds and a partial payment to Chantel Bunch of $31,204.87 in "non-welfare" funds. The trial court specified that the funds due to Sheri Marinos (approximately $74,794.21) were payable directly to DCSS. The trial court awarded ongoing monthly support of $440 to Stephanie Solace; support of $476 per month to Sheri Marinos; and $302 per month to Chantel Bunch. The monthly support payments were to commence July 1, 2003.

## DISCUSSION

Appellant reasons that his broad discretion as trustee, combined with the spendthrift clause in the Trust instrument, make Probate Code section 15305[2] inapplicable to the Trust. Appellant claims that the court may not "override or compel the Trustee's discretion by forcing the Trustee" to pay trust funds in satisfaction of a support judgment. He acknowledges that the court is authorized to order payments from the Trust. He contends, however, that the court's authority is limited to those payments that the trustee has chosen to make in the exercise of his discretion.

### *Statutory Interpretation*

■ The trial court's statutory interpretation is a question of law which we review de novo. (*Harbor Fumigation, Inc. v. County of San Diego Air Pollution Control Dist.* (1996) 43 Cal.App.4th 854, 859 [50 Cal.Rptr.2d 874].) ■ When presented with a question of statutory construction, our primary task is to ascertain legislative intent to effect the purpose of the

---

[2] All further statutory references are to the Probate Code unless otherwise stated.

statute. (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].) "We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.]" (*Ibid.*) ■ If the statutory language is ambiguous, we consider the legislative history and select the construction that comports most closely with the legislative intent. We must promote, rather than defeat, the general purpose of the statute. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

### Spendthrift, Support and Discretionary Trusts

As background for our statutory interpretation, we briefly address the distinctions between spendthrift, support and discretionary trusts. A *spendthrift trust* is created when the trust instrument provides that the beneficiary may not assign his interest and the trust is not subject to the claims of creditors. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 165, p. 1017; Rest.2d Trusts, § 152.) Under a *support trust*, the trustee is directed to pay no more than is necessary for the education or support of the beneficiary. (Witkin, *supra*, § 166, p. 1019; Rest.2d Trusts, § 154, com. a, p. 320.) A *discretionary trust* directs the trustee to pay whatever amount the trustee sees fit. (Witkin, *supra*, § 166, p. 1019; Rest.2d Trusts, § 155.)

"A true discretionary trust, as it developed in England and as it is recognized in California, involves a discretion to pay over income (or principal) or to withhold it. It is not an abuse of discretion (if there is no improper motivation) for the trustee to pay nothing. [Fns. omitted.]" (Prof. Russell Niles, consultant to Cal. Law Revision Com., Memo Re Spendthrift and Related Trusts (Nov. 6, 1984).) Appellant and Solace characterize the Trust as a spendthrift trust, while DCSS claims it is a discretionary trust. For the purpose of our analysis, it is unnecessary to characterize the type of trust before us. It is undisputed that appellant alone has discretion to make payments from the Trust. Marinos has no right to compel such payments.

### Newly Enacted Probate Code Sections 15300–15307

In 1986, the Law Revision Commission recommended enactment of new probate statutes to improve existing law relating to spendthrift trusts. The Commission stated that "California trust law is now a patchwork. The various parts are largely uncoordinated . . . . [¶] A major purpose of this recommendation is to reorganize and consolidate the scattered provisions of existing law.

[Fn. omitted.]" (Selected 1986 Trust & Probate Legislation with Official Comments (Sept. 1986) Cal. Law Revision Com., Recommendations, pp. 1221–1222, 1229.)[3] There were two objectives: 1) to reduce the ability of a general creditor to reach a beneficiary's interest in a trust; and 2) to give greater rights to support creditors. Child support creditors were elevated to the status of "preferred creditors" and permitted to reach a beneficiary's interest in the trust, despite the existence of a spendthrift clause. (Memorandum Relating to Probate Code (Mar. 3, 1986), Comments of Cal. State Bar to Cal. Law Revision Com.)

In order to effect these changes, the Legislature enacted sections 15300–15307, governing restrictions on transfer of trust income or principal. Where a trust instrument provides that a beneficiary's interest in income or principal is not subject to voluntary or involuntary transfer (a spendthrift clause), the beneficiary's interest may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary. (§§ 15300, 15301, subds. (a)–(b).) The same is true of a trust created for the beneficiary's education or support. (§ 15302.)

There are certain exceptions to these principles, outlined in sections 15304–15307. A creditor may reach a beneficiary's interest when (1) the settlor is also the beneficiary (§ 15304); (2) there is a claim for child support or spousal support (§ 15305); (3) the beneficiary owes restitution to crime victims due to the beneficiary's criminal conduct (§ 15305.5);[4] (4) there is a claim for reimbursement for public support (§ 15306); and (5) a beneficiary's income exceeds the amount necessary for education and support (§ 15307). Here we are concerned primarily with section 15305, governing claims for child support.

### Special Rights of Support Creditors

### (Probate Code Section 15305)

Under section 15305, a claimant for delinquent child or spousal support can reach a beneficiary's interest in a trust. Support claimants are preferred creditors and entitled to rights unavailable to a general creditor. (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15305, pp. 556–557; § 15306.5, subd. (d); 11 Witkin, Summary of Cal.

---

[3] The legislative history we recite is drawn from Assembly Bill No. 2652 (1985–1986 Reg. Sess.), enacted as Statutes 1986, chapter 820, page 2728 et seq. Another bill, Assembly Bill No. 2625, also recommended certain improvements to the Probate Code. Both were made identical through reciprocal amendments. Assembly Bill No. 2625 contains only duplicate copies of the analyses, thus we do not cite it.

[4] This statute was enacted in 1991. (See 11 Witkin, Summary of Cal. Law (2003 Supp.) Trusts, § 178A, p. 595.)

Law (9th ed 1990) Trusts, § 168, pp. 1021–1023.) A minor's right to support may not be defeated by a spendthrift provision in a trust instrument. (§ 15305, subd. (d).) "Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of a money judgment against the beneficiary for child or spousal support." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15305, p. 556.) A spendthrift provision "is not effective to exempt the trust from enforcement of a judgment for support of a minor child . . . ." (*Ibid.*)

*Legislative History Underlying Section 15305*

Although the legislative history behind section 15305 establishes that a support creditor may reach a beneficiary's interest in a spendthrift trust, this is not our inquiry. The issue before us is whether a court may order a trustee to exercise its discretion to satisfy a support judgment (from trust income or principal) when the trustee has chosen not to make a payment to the beneficiary.

Under section 15305, subdivision (b), when a trust instrument gives a beneficiary the right to compel the trustee to make payments to the beneficiary, the trial court may order the trustee to satisfy a support judgment from both present and future payments. Subdivision (b) makes no reference to a trustee's exercise of discretion.[5]

By contrast, section 15305, subdivision (c) contains language referring to a trustee's exercise of discretion: "Whether or not the beneficiary has the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, the court may, to the extent that the court determines it is equitable and reasonable under the circumstances of the particular case, order the trustee to satisfy all or part of the support judgment out of all or part of future payments that the trustee, *pursuant to the exercise of the trustee's discretion,* determines to make to or for the benefit of the beneficiary." (Italics added.) Appellant claims that under subdivision (c), the trial court must defer to the trustee's exercise of discretion when fashioning a support order.

Section 15305 is drawn from a Wisconsin statute relating to enforcement of child support. It also reflects the public policy articulated in the Restatement Second of Trusts, section 157, subdivision (a), that a trust beneficiary's

---

[5] Section 15305, subdivision (b) provides: "If the beneficiary has the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, the court may, to the extent that the court determines it is equitable and reasonable under the circumstances of the particular case, order the trustee to satisfy all or part of the support judgment out of all or part of those payments as they become due and payable, presently or in the future."

interest may be reached to satisfy a support judgment. (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15305, p. 556.) The Wisconsin statute provides: "(4) Claims for Child Support. Notwithstanding any provision in the creating instrument or subs. (1) and (2), upon application of a person having a valid order directing a beneficiary to make payments for support of the beneficiary's child, the court may: [¶] . . . [¶] (b) In the case of a beneficiary under a discretionary trust, order the trustee to satisfy part or all of the claim out of part or all of future payments of income or principal which are to be made *pursuant to the exercise of the trustee's discretion* in favor of such a beneficiary." (Wis. Stat. Ann. § 701.06, subd. (4), italics added.)

The question becomes: may a court order a trustee to exercise its discretion to make a payment to the beneficiary? Because there are no California cases interpreting section 15305, we turn to the single decision interpreting the Wisconsin child support statute. Section 701.06, subdivision (4)(b) "grants courts the authority to order trustees to satisfy a child support obligation directly from discretionary payments that the trustees have decided to authorize, thereby circumventing potential opposition of the beneficiary and reducing the opportunity for avoidance of support obligations." (*Grohmann v. Grohmann* (1993) 180 Wis.2d 690, 695 [511 N.W.2d 312].)

In *Grohmann*, husband was both the settlor and beneficiary under a discretionary trust. Wife argued that 1) husband's undistributed trust income should be used in the calculation of child support, and 2) the trial court had authority to order payment of child support from the trust. The Wisconsin Court of Appeal accepted wife's first argument, but ruled that her second argument was premature. It stated that wife had not established that she was a judgment creditor, thus the court had no authority to order payment from the trust. (*Grohmann v. Grohmann, supra*, 180 Wis.2d at p. 696.)

"Nothing in the statute [section 701.06, subdivision (4)(b)] authorizes a court to relieve trustees of their discretion over when a trust shall make payments to or on behalf of a beneficiary, or to substitute its own discretion for that of the trustees. Under the statute, the decision to distribute trust income remains with the trustees." (*Grohmann v. Grohmann, supra*, 180 Wis.2d at p. 695.) The Wisconsin Supreme Court affirmed the ruling of the Court of Appeal. It concluded that wife's judgment creditor argument was premature because she had failed to show that husband had not met his support obligation. (*Grohmann v. Grohmann* (1995) 189 Wis.2d 532, 539 [525 N.W.2d 261].)

## Trustee's Exercise of Discretion

■ The facts before us are quite different than those in *Grohmann*. Here, Solace and DCSS are judgment creditors to whom Marinos owes over $140,000 in past due support and $1,218 in ongoing monthly support. We acknowledge that existing law gives a trustee the discretion to determine whether payments are made and in what amount. However, in exercising its discretion to make or withhold payments, a trustee may not act in bad faith or with an improper motive.

■ "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." (Rest.2d Trusts, § 187, p. 402; 11 Witkin, Summary of Cal. Law, *supra*, Trusts, § 97, p. 973.) The court will not interfere with a trustee's exercise of discretion "unless the trustee, in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of reasonable judgment." (Rest.2d Trusts, § 187, com. e, p. 403.) When a trust instrument confers "absolute," "sole" or "uncontrolled" discretion, "the trustee shall act in accordance with fiduciary principles and shall not act in bad faith or in disregard of the purposes of the trust." (§ 16081, subd. (a).) To determine the extent of the trustee's discretion, we look to the intention of the trustor, as manifested in the trust instrument. (§§ 21101, 21102; *Estate of Marre* (1941) 18 Cal.2d 184, 188 [114 P.2d 586]; *Estate of Ferrall* (1953) 41 Cal.2d 166, 175–176 [258 P.2d 1009].)

According to the language of the Trust, Helen Marinos wished to provide for the "support, care, maintenance and education" of her sons. Upon the death of either son, the trust estate was to be administered for the benefit of his "children and/or to the spouse of a deceased child of the Grantor." Although neither son is deceased, the Trust instrument reflects Helen Marinos' intent to provide support to her grandchildren.

## Public Policy Favoring Support

We next consider California's strong public policy in favor of the payment of support. (*Parscal v. Parscal* (1983) 148 Cal.App.3d 1098, 1102 [196 Cal.Rptr. 462].) Under section 15305, even if the trust instrument contains a spendthrift clause applicable to claims for child support, "it is against public policy to give effect to the provision." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15305, p. 556.) "As a general rule,

the beneficiary should not be permitted to have the enjoyment of the interest under the trust while neglecting to support his or her dependents." (*Ibid.*) Out-of-state courts have reached the same conclusion. The policy behind the payment of support "outweigh[s] the public policy that an owner of property, such as the settlor of a trust, may dispose of it as he pleases and may impose spendthrift restraints on the disposition of income." (*Hurley v. Hurley* (1981) 107 Mich.App. 249, 254 [309 N.W.2d 225] [spendthrift trust created by mother did not shield son, the beneficiary, from child support claims].)

By enacting section 15305, the Legislature intended to allow a support creditor to satisfy court-ordered child support obligations where the parent is a trust beneficiary. The statute was crafted to preclude a beneficiary's efforts to avoid a support obligation. The fact that the statute refers to payments made by the trustee demonstrates legislative intent that the trustee make distributions from the trust. Although a trustee may be given broad discretion, it may not exercise its discretion with an improper motive.

Marinos has acted with patent disregard towards the support of his six children. He owes over $140,000 in past-due support and has an ongoing monthly obligation of $1,218. Appellant has refused to make any trust distributions to satisfy Marinos' child support obligation. In light of the statutory and public policy objectives in favor of the payment of support, we conclude appellant's exercise of his discretion was misdirected. To deny the trial court authority to compel the exercise of a trustee's discretion in this instance creates the very problem that the statute was enacted to remedy— avoiding the payment of child support. The statute cannot have been intended to allow a beneficiary to defraud support creditors by hiding behind the trustee's discretion. This is directly contrary to the legislative purpose behind section 15305.

 We have chosen the statutory construction that comports most closely with legislative intent. It promotes, rather than defeats, the general purpose of the statute. We conclude that, under section 15305, subdivision (c), a court may overcome the trustee's discretion under the narrow circumstances present here: when there is an enforceable child support judgment that the trustee refuses to satisfy. Under these circumstances, the trial court may order the trustee to satisfy past due and ongoing support obligations directly from the trust. There is no evidence of extenuating circumstances that would excuse Marinos from his statutory obligation to pay child support. Our analysis is not defeated by the fact that Solace sought an injunction prohibiting the distribution of trust assets pending the outcome of the litigation.

*Liability for Public Support (Section 15306)*

Appellant points to a parallel statute, section 15306, governing reimbursement of public support. This statute allows the state to seek reimbursement for public support that has been furnished to a trust beneficiary, his spouse or minor child. (§ 15306, subd. (a).) If the beneficiary is also the settlor (or the settlor's spouse or minor child), the court may order reimbursement "without regard to whether the trustee has then exercised or may thereafter exercise the discretion in favor of the beneficiary." (§ 15306, subd. (a)(3).)[6] Appellant argues that since the Legislature expressly included this language in section 15306, it intended to exclude it under section 15305. He reasons that the court may only "override" the trustee's discretion in an action under section 15306.

There is ample reason for the differing language between the two statutes. Section 15306, subdivision (a)(3) echoes the statutory restriction in these trusts in which the settlor is also the beneficiary. (§ 15304.) Under section 15304, a settlor may not create a spendthrift trust in his own favor. The rationale is that a settlor may not enjoy his wealth while preventing his creditors from reaching it. (*Nelson v. California Trust Co.,* (1949) 33 Cal.2d 501, 502 [202 P.2d 1021]; Rest.2d. Trusts, § 156, subds. (1)–(2).) A spendthrift trust can be rendered invalid when the beneficiaries exercise excessive control. (*In re Moses* (9th Cir. 1999) 167 F.3d 470, 473 [construing a trust's spendthrift clause in bankruptcy proceeding].)

We observe that section 15306, subdivision (a)(3) provides that the court may overcome the trustee's discretion when the settlor and the beneficiary are the same person (or the settlor's spouse or minor child). Under such circumstances, the beneficiary is in a position to influence the actions of the trustee. This impropriety is particularly offensive because 1) the settlor has created a trust that shields his own assets; 2) although the settlor has the means to support his dependents, he has failed to do so; and 3) the state has had to step in to provide public support.

By contrast, section 15305, subdivision (c) applies when the settlor and beneficiary are different individuals. The settlor has expressed her wishes in the trust instrument and appointed the trustee to carry them out. It is

---

[6] Section 15306, subdivision (a)(3) provides: "If the beneficiary is a settlor or the spouse or minor child of the settlor and the beneficiary does not have the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, to the extent that the trustee has the right to make payments of income or principal or both to or for the beneficiary pursuant to the exercise of the trustee's discretion, order the trustee to satisfy all or part of the liability *without regard to whether the trustee has then exercised or may thereafter exercise the discretion in favor of the beneficiary.*" (Italics added.)

presumed that the trustee will act in good faith to effectuate the settlor's intent. (§ 16081, subd. (a).) Under these circumstances, it is understandable that the Legislature did not include a provision allowing a court to overcome the trustee's discretion. It was not within their contemplation that the trustee, faced with an enforceable child support judgment, might act improperly and refuse to satisfy the support judgment altogether.

Appellant next contends that section 15303, subdivision (a) must be harmonized with section 15305 to effectuate legislative intent. We reject this argument without further analysis because section 15303 concerns the trustee's obligations to general creditors. It does not apply to enforcement of a support judgment. Appellant's cited authorities are likewise inapplicable because they were decided under prior law, before the 1986 enactment of section 15305.

The judgment is affirmed. Appellant is ordered to satisfy the judgments for past due and future child support directly from trust income or principal. Solace's request for sanctions is denied. Costs on appeal are awarded to respondents.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied April 28, 2004, and the opinion was modified to read as printed above.