[No. B189885. Second Dist., Div. One. Feb. 21, 2007.]

RICHARD YOUNG, Plaintiff and Appellant, v.
KATHY JAYNE McCOY, as Trustee, etc., et al., Defendants and
Respondents.

**COUNSEL**

Robert Hirschman & Associates, Robert Hirschman; and Paul A. Lenz for Plaintiff and Appellant.

Oldman, Cooley, Sallus, Gold, Birnberg & Coleman, Marshal A. Oldman and Susan R. Izenstark for Defendant and Respondent Kathy Jayne McCoy.

Gifford & Dearing and Henry H. Dearing for Defendant and Respondent First Church of Christ, Scientist, in Boston, Massachusetts.

**OPINION**

**ROTHSCHILD, J.**—In this case, we hold that Probate Code section 15305.5, subdivision (c)[1] does not allow a court to order a trustee to invade the assets of a discretionary trust in order to pay a restitution judgment creditor if the trustee has permissibly exercised its discretion to make no payments to the beneficiary of the trust.

---

[1] All further statutory references are to the Probate Code, unless otherwise indicated.

Section 15305.5, subdivision (c) provides: "Whether or not the beneficiary has the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, the court may, to the extent that the court determines it is equitable and reasonable under the circumstances of the particular case, order the trustee to satisfy all or part of the restitution judgment out of all or part of future payments that the trustee, pursuant to the exercise of the trustee's discretion, determines to make to or for the benefit of the beneficiary."

Richard Young (Richard)[2] appeals from a final order denying his request, pursuant to Code of Civil Procedure section 709.010,[3] that the court direct trustee Kathy Jayne McCoy (McCoy) to release funds from a discretionary trust created for the benefit of Richard's brother Steven Young (Steven) by their mother, Lucile A. Young (Lucile). Richard seeks to invade the trust's assets to enforce a restitution judgment against Steven arising from Steven's attempted murder of Richard. Although the trust allows McCoy to make payments of interest and principal as she deems necessary for Steven's health, support, maintenance, and education, it also allows her to refuse to make such payments if, in her discretion, she determines that Steven does not need them. In this case, according to her uncontested declaration, McCoy believes, and Richard agrees, that such needs are being met by the state because Steven is serving a life prison term for attempting to kill Richard. As section 15305.5, subdivision (c) only permits the court to compel a trustee to pay income or principal to the creditor of a beneficiary if the trustee has, in the exercise of her discretion, determined to make payments to the beneficiary, and as McCoy's exercise of her discretion not to make such payments is not an abuse of her discretion, the court lacked the authority to compel McCoy to make any payment to Richard and properly denied his request. Accordingly, we affirm the trial court's order.

## FACTS

On the morning of July 16, 1997, Richard was visiting Lucile at her home in Woodland Hills where Steven also lived.[4] A family argument ensued and Steven shot Richard, who survived with injuries. Steven was convicted of premeditated attempted murder and was sentenced in January 1998 to life in prison plus 13 years. In July 1998, Richard filed a personal injury action against Steven, and in August 2001 he won a default judgment against Steven for $1,275,000.

---

[2] We will refer to certain parties by their first names for purposes of clarity, not out of disrespect. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306].)

[3] Section 709.010, subdivision (b) of the Code of Civil Procedure provides, "The judgment debtor's interest as a beneficiary of a trust is subject to enforcement of a money judgment only upon petition under this section by a judgment creditor to a court having jurisdiction over administration of the trust . . . ." Subdivision (c) adds, "Nothing in this section affects the limitations on the enforcement of a money judgment against the judgment debtor's interest in a trust under Chapter 2 (commencing with Section 15300) of Part 2 of Division 9 of the Probate Code, and the provisions of this section are subject to the limitations of that chapter."

[4] The parties do not dispute the basic background facts in this appeal regarding Steven's criminal conduct that led to the restitution judgment or Lucile's alterations of her trust in response to Richard's litigation against her and Steven following the attempted murder.

On December 16, 1998, Lucile amended her testamentary trust, making McCoy her successor trustee and ordering the successor trustee to hold the entire trust for the benefit of Steven throughout his life, then distribute any remaining trust assets to the Christian Science Foundation of Boston, Massachusetts after Steven's death. The amended trust specified that Steven's interests were primary, the charitable remainder beneficiary's secondary. The trust stated, "The Trustee shall pay to or apply for the benefit of [Steven] . . . , so much of the income, and so much of the principal, of the Trust estate, up to the whole thereof, as the Trustee shall deem necessary for the health, support, maintenance, and education, of [Steven], taking into consideration all other sources available for such purposes."[5]

On May 14, 1999, Lucile again amended her trust. The newly amended version generally reaffirmed the original trust as previously amended, repeated the standard spendthrift clause, and reemphasized, "Upon the death of [Lucile], the primary purpose of this Trust is to care for [Steven], and the Trustee or Trustees shall give due concern to his needs and comfort, taking into consideration the needs that [Steven] will have for his support, health, maintenance, and education, for the rest of his life, and can use the income and principal, up to the whole thereof, pursuant to the terms of the Trust created for his benefit; the interest of the charitable remainder beneficiary is secondary to the purpose."

Lucile died on March 4, 2005, survived only by Steven and Richard. On May 16, 2005, Richard filed a petition to enforce his restitution judgment against Steven from the trust assets. Steven made no appearance in the trial court proceedings, but McCoy responded and also petitioned the court for instructions. She informed the court that she had made no payments to Steven because Steven's "basic needs of support and health are believed to be taken care of by the State of California while he is in prison." First Church of Christ, Scientist, of Boston, Massachusetts (Church), as the remainder beneficiary, also objected to Richard's petition. The court denied Richard's petition on the basis that section 15305.5, subdivision (c) unambiguously conferred no authority on the court to order McCoy to distribute any funds to Richard when McCoy had reasonably exercised her discretion under the trust to make no payments to Steven, because the statute allows a court to direct any payments from a trust to a restitution judgment creditor only after the trustee

---

[5] The trust amendment included a standard spendthrift clause prohibiting a creditor's attachment or a beneficiary's alienation of trust assets, noted that Richard was one of Lucile's only two children, specified that the trustee not allow Richard into Lucile's home after her death, and granted Richard $5,000 after Lucile's death if he would release Lucile, Steven, and the trust from all claims known or unknown within 60 days of receiving notice of the clause. Richard never accepted this term.

has first determined to make payments to the beneficiary himself. Richard timely appealed.

## DISCUSSION

### A.

Richard contends that the trial court erred by not ordering McCoy to pay all or part of the restitution judgment from trust funds. Relying on his interpretation of legislative history and *Ventura County Dept. of Child Support Services v. Brown* (2004) 117 Cal.App.4th 144 [11 Cal.Rptr.3d 489] (*Ventura County DCSS*), he argues that once a restitution judgment exists, the court has authority to order the trustee to distribute funds from the trust regardless of how or why the trustee exercised her discretion. We disagree.

■ Our decision hinges on the construction and interpretation of section 15305.5. Interpretation of a statute is a question of law, so our review is de novo. (*Ventura County DCSS, supra,* 117 Cal.App.4th at p. 149.) To interpret the statute, we must ascertain legislative intent, starting with the language of the statute. (*Id.* at pp. 149–150.) "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) Only if the statute is ambiguous must we consult extrinsic sources such as legislative history. (*Ibid.*) In reading a statute, we keep in mind the fundamental principle of statutory construction that "interpretations which render any part of a statute superfluous are to be avoided." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1207 [48 Cal.Rptr.3d 108, 141 P.3d 225].) " 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' " (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978], quoting *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ As noted above, section 15305.5, subdivision (c) permits the court to "order the trustee to satisfy all or part of the restitution judgment out of all or part of future payments that the trustee, *pursuant to the exercise of the trustee's discretion,* determines to make to or for the benefit of the beneficiary." (Italics added.) Subdivision (c) follows a related provision, section 15305.5, subdivision (b), which provides that in trusts pursuant to which the beneficiary *can* compel the trustee to make payments to or for the beneficiary,

the court may "order the trustee to satisfy all or part of the restitution judgment out of all or part of those payments as they become due and payable, presently or in the future."[6] Thus, subdivision (b) applies to those trusts that provide for nondiscretionary periodic or lump-sum payments from trust assets, while subdivision (c) applies to payments that are subject to the trustee's discretion.[7]

Crucial to our decision is the language of section 15305.5, subdivision (c) that a court may "order the trustee to satisfy all or part of the restitution judgment out of all or part of future payments that the trustee, *pursuant to the exercise of the trustee's discretion*, determines to make to or for the benefit of the beneficiary." (Italics added.) That language could not more clearly state that the trustee's determination to make—or not make—future payments is discretionary.

Despite this unambiguous language, Richard points to legislative history and other external indications of legislative intent, contending that by enacting section 15305.5, the Legislature intended to make trust assets available for payment of restitution judgments regardless of trustees' discretion. But before we even consider legislative history, we must first carefully interpret the statutory language of section 15305.5 as the best indication of legislative intent. As we have discussed, that statutory language clearly and unambiguously limits a court's power to ordering a trustee to satisfy all or part of a restitution judgment only from future payments of trust funds that the trustee first determines to make, "pursuant to the exercise of the trustee's discretion." To interpret the statute as Richard would have us do would render the clause concerning the trustee's discretion mere surplusage. This we may not do. "[I]nterpretations which render any part of a statute superfluous are to be avoided." (*Wells v. One2One Learning Foundation*, supra, 39 Cal.4th at p. 1207.)

In any case, we find that an interpretation of section 15305.5 that respects the trustee's discretion fits within the overall statutory framework. (See

---

[6] The entire text of section 15305.5, subdivision (b) reads, "If the beneficiary has the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, the court may, to the extent that the court determines it is equitable and reasonable under the circumstances of the particular case, order the trustee to satisfy all or part of the restitution judgment out of all or part of those payments as they become due and payable, presently or in the future."

[7] A beneficiary only may compel payments that are not subject to the trustee's discretion. (See 60 Cal.Jur.3d (2005) Trusts, § 133, pp. 201–202.) A trust may also be structured to provide nondiscretionary scheduled payments (which would come under section 15305.5, subdivision (b)) but also allow a trustee authority to make additional discretionary payments (which would come under section 15305.5, subdivision (c)). (See 60 Cal.Jur.3d, supra, Trusts, § 133, pp. 201–202.)

*DuBois v. Workers' Comp. Appeals Bd., supra*, 5 Cal.4th at p. 388.) Subdivisions (b) and (c) of section 15305.5 are closely parallel. Under subdivision (b), when the trustee is required to make nondiscretionary payments, these payments are subject to court distribution to a restitution creditor. Subdivision (b) does not allow the court to order payments to occur beyond the terms of the trust; the trust controls how much and how often money is paid out, the court does not. But when and if trust payments are made, the court, at its discretion and guided by reason and equity, has the power to ensure that the beneficiary receives not one cent until the restitution judgment is fully paid. In short, under subdivision (b), the court has no power to invade trust assets prior to their scheduled release, but can make sure that a trust beneficiary receives no benefit from them.

If section 15305.5, subdivision (c), which applies to discretionary trusts, is interpreted to allow the court to force payments from the trust at any rate and volume the court sees fit, then subdivision (c) would be much more sweeping than section 15305.5, subdivision (b) and would put at a relative disadvantage the restitution judgment creditor who is forced to seek recovery under subdivision (b) from a possibly small trickle of periodic payments or from a lump sum payment quite remote in time, depending on the trust's terms. By this interpretation, a claimant under subdivision (b) is a prisoner of the trust's terms who must wait for the trust to release funds; a claimant under subdivision (c) is not. But an interpretation of subdivision (c) that respects the trustee's discretion offers greater symmetry between the two subdivisions: In each case, the design of the trust controls what payments can come out of the trust, but in each case, the court has the power partly or wholly to preclude the beneficiary from receiving any benefit until the entire restitution judgment is paid.

Our interpretation also harmonizes with section 15306.5, which allows general creditors of a spendthrift trust under specified circumstances to obtain no more than 25 percent of the value of trust payments. (See Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15306.5, p. 560.) As section 15306.5, subdivision (a) only acts upon "the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary," it parallels the structure of subdivisions (b) and (c) of section 15305.5 and similarly emphasizes the trustee's discretion.

Given that section 15305.5, subdivision (b) and section 15306.5, subdivision (a) allow a court to redirect to creditors only those funds that the

trust or the trustee authorizes to be released to a beneficiary, to read section 15305.5, subdivision (c) as allowing a court unbridled authority to invade trust assets—and to read out the clause in subdivision (c) that expressly preserves trustee discretion—would be wholly anomalous. We will not so read that statute.[8]

## B.

Because we find the plain meaning of section 15305.5, subdivision (c) sufficiently clear, both in isolation and in its statutory context, we need not consider legislative history or other extrinsic indications of legislative intent. We note, however, that our interpretation is consistent with expressed legislative intent. The sponsor of the bill that became section 15305.5 stated, "I do not believe a beneficiary should be permitted to have the enjoyment of the interest under the trust while neglecting to pay restitution to the victim." (Assemblyman Tom Umberg, sponsor of Assem. Bill No. 534 (1991–1992 Reg. Sess.), letter to Governor Pete Wilson, July 12, 1991; see *Ventura County DCSS, supra,* 117 Cal.App.4th at pp. 154–155, quoting Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15305, p. 556 [" 'As a general rule, the beneficiary should not be permitted to have the enjoyment of the interest under the trust while neglecting to support his or her dependents.' "] [addressing code section closely parallel to § 15305.5].) An interpretation of section 15305.5 that respects the trustee's discretion thus is consistent with the legislative goal of empowering courts to deny enjoyment of trust interests to beneficiaries. And like the language of section 15305.5 itself and neighboring code provisions, the legislative history Richard provides does not indicate a legislative intent to eliminate a trustee's discretion.[9]

---

[8] Section 15303, subdivision (a), the basic code provision concerning discretionary trusts, also reaffirms trustee discretion: "If the trust instrument provides that the trustee shall pay to or for the benefit of a beneficiary so much of the income or principal or both as the trustee in the trustee's discretion sees fit to pay, a transferee or creditor of the beneficiary may not compel the trustee to pay any amount that may be paid only in the exercise of the trustee's discretion." Unlike sections 15300, 15301, and 15302, which establish the validity of nondiscretionary spendthrift and support trusts, section 15303 is not expressly limited by the preferred creditor exceptions in sections 15304–15307, which suggests legislative intent to treat discretionary trusts differently and which was pointed out by critics of the assembly bill that became section 15305.5 before *its* passage. (See Office of Criminal Justice Planning, Enrolled Bill Rep. on Assem. Bill No. 534 (1991–1992 Reg. Sess.) July 18, 1991, pp. 2–3.)

[9] Notably, the case that provoked Assemblyman Umberg to propose his bill involved an incarcerated felon who was the beneficiary of a nondiscretionary spendthrift trust that released $300 to him monthly. (See Keaton, *Breach of Trusts* (Nov. 1990) Cal. Lawyer, p. 24.)

C.

■ A trustee's discretion is not unlimited, however. If a trustee abuses her discretion, a court may order that trustee to do things differently. But whether a trustee exercises her discretion appropriately or abusively is measured by how this exercise conforms to the trustor's intent. "[T]he basic inquiry, whenever the exercise of a trustee's discretion, absolute or otherwise, is challenged, is always whether the trustee acted in the state of mind contemplated by the trustor." (*Estate of Greenleaf* (1951) 101 Cal.App.2d 658, 662 [225 P.2d 945]; see also *Estate of Lackmann* (1958) 156 Cal.App.2d 674, 680 [320 P.2d 186]; *Estate of Canfield* (1947) 80 Cal.App.2d 443, 450 [181 P.2d 732].) As such, a trustee's determination not to make future payments cannot be an abuse of discretion if it is clearly in keeping with the trustor's intent. Moreover, the actions of a trustee are presumed to be in good faith (*Estate of Ferrall* (1953) 41 Cal.2d 166, 177 [258 P.2d 1009]), and the burden is on the party challenging the action to show otherwise. (See *Estate of Crisler* (1950) 97 Cal.App.2d 198, 202 [217 P.2d 470].) Richard has not shown or even attempted to show that the trustee acted in bad faith.[10]

■ Lucile's intent, as expressed in her first and second amended declarations of trust, was that McCoy use as much of the trust income and principal as McCoy "shall deem necessary" for the "health, support, maintenance, and education, of [Steven], taking into consideration all other sources available for such purposes," and that McCoy "give due concern to his needs and comfort, taking into consideration the needs that [Steven] will have for his support, health, maintenance, and education, for the rest of his life[.]" In short, McCoy was given broad discretion to fulfill the trust's purpose of providing for Steven's needs to the extent that "all other sources available for such purposes" were not doing so. Thus, Lucile's trust may be characterized as a discretionary support trust, in which the trust's purpose is to provide for a beneficiary's needs but the trustee has discretion in determining those needs. (See 13 Witkin, Summary of Cal. Law (10th ed. 2005) Support and Discretionary Trusts, § 152, p. 717 ["A trust for support is one under which the trustee is to pay or apply no more than is necessary to educate or support the beneficiary." (Italics omitted.)].)[11] We find in McCoy's exercise of

---

[10] Instead, Richard contends, based upon his reading of *Ventura County DCSS*, that a trustee's refusal to make payments when there is an unpaid restitution judgment is bad faith per se.

[11] "Spendthrift trust" is sometimes used as a generic term to describe all trusts designed to protect trust assets from a beneficiary's creditors, but such trusts are more properly divided into three categories: spendthrift trusts, discretionary trusts, and support trusts. Spendthrift trusts provide that a beneficiary's interest may not be alienated or assigned to creditors. With such trusts, the trustee might have no discretion over when to make payments or how much to pay, and the trust need not be limited to providing for a beneficiary's needs, though such a purpose is presumed unless another is stated in the trust. (See 13 Witkin, Summary of Cal.

discretion no evidence of the bad faith or unreasonable conduct that is required to find that a trustee has abused her discretion. (See *Estate of Traung* (1962) 207 Cal.App.2d 818, 834 [24 Cal.Rptr. 872]; *Estate of Canfield, supra,* 80 Cal.App.2d at p. 450.)

### D.

Richard, however, contends that *Ventura County DCSS,* in which Division Six of our district, under a closely parallel code provision, allowed a child support creditor to obtain payment from a discretionary trust, is precedent for his interpretation of section 15305.5.[12] We disagree.

In *Ventura County DCSS,* the beneficiary of a discretionary trust owed back child support payments and ongoing monthly payments, but the trustee refused to make any payments to the beneficiary without, apparently, giving any reason other than that he had unfettered discretion, and argued that the trial court could not force him to make such payments. The appellate court disagreed. (*Ventura County DCSS, supra,* 117 Cal.App.4th at pp. 147, 149, 154–155.)

In *Ventura County DCSS,* the only apparent reason for nonpayment was to avoid paying child support. Indeed, the court in *Ventura County DCSS* found that the trustee had abused his discretion by frustrating the trustor's intent to provide support for her grandchildren. (*Ventura County DCSS, supra,* 117 Cal.App.4th at p. 154.) Here, by contrast, McCoy explained why she did not deem any payments toward Steven's support to be necessary: Given her obligation under the trust to consider alternate sources of support, she saw that the State of California was providing for Steven's needs. This explanation is reasonable and in keeping with Lucile's stated intent.

---

Law (10th ed. 2005) Nature and Validity of Spendthrift Trusts, § 151, p. 715; 60 Cal.Jur.3d, *supra,* Trusts, § 127, pp. 194–195.) A discretionary trust usually is intended for a beneficiary's support but can also allow a trustee discretion to make payments beyond, or regardless of, what is necessary for the beneficiary's support. Similarly, a support trust often might give the trustee some discretion as to making payments and determining what the beneficiary needs, but it can require that certain minimum payments be made periodically regardless of the trustee's discretion. (See 60 Cal.Jur.3d, *supra,* Trusts, § 133, pp. 201–202.) Because McCoy has broad discretion over defining and satisfying Steven's needs, the label "discretionary support trust" seems appropriate here.

[12] Section 15305.5 clearly was derived from section 15305, which the court applied in *Ventura County DCSS.* Section 15305 was enacted in 1986 along with most of the other preferred creditor exceptions found in sections 15304–15307, but section 15305.5 was enacted in 1991. (See *Ventura County DCSS, supra,* 117 Cal.App.4th at pp. 150–151, 151, fn. 4.) The structure of the two statutes is identical, and the language is also identical but for the definition and use of "support judgment" in section 15305 as against "restitution judgment" in section 15305.5.

## E.

Because few if any other jurisdictions have a statutory provision similar to section 15305.5, other states' authorities do not much illuminate the question before us.[13] Yet because the language of section 15305.5 was borrowed directly from section 15305, and section 15305 was patterned closely on a Wisconsin statute that creates a preferred creditor exception for child support creditors (see *Ventura County DCSS, supra,* 117 Cal.App.4th at pp. 152–153), we find instructive the reasoning in a Wisconsin opinion interpreting that statute, *Grohmann v. Grohmann* (1993) 180 Wis.2d 690 [511 N.W.2d 312].

The Wisconsin statute in question provides that if an applicant to the court has a valid order directing a trust beneficiary to pay child support, the court may, "[i]n the case of a beneficiary under a discretionary trust, order the trustee to satisfy part or all of the claim out of part or all of future payments of income or principal which are to be made *pursuant to the exercise of the trustee's discretion* in favor of such beneficiary." (Wis.Stat.Ann., § 701.06, subd. (4)(b), italics added.) Rejecting the appellant's argument that this statute allowed the court to invade trust principal or income and mandate payments at will to enforce child support judgments, the court in *Grohmann* reasoned, "The phrase 'payments to be made' is followed by 'pursuant to the exercise of the trustee's discretion.' Nothing in the statute authorizes a court to relieve trustees of their discretion over when a trust shall make payments to or on behalf of a beneficiary, or to substitute its own discretion for that of the trustees." (*Grohmann v. Grohmann, supra,* 511 N.W.2d at p. 314.) Section 15305.5 likewise permits the court to interfere with the trustee's discretion only when it has been abused.[14]

---

[13] In both *Duvall v. McGee* (Md.Ct.App. 2003) 375 Md. 476 [826 A.2d 416] and *Scheffel v. Krueger* (N.H. 2001) 146 N.H. 669 [782 A.2d 410], the courts declined to create a common law preferred creditor exception for restitution judgment creditors analogous to that under section 15305.5. The *Duvall* court at length distinguished child support creditors from restitution creditors, concluding that the obligation to pay child support is a legally compelling duty whereas the obligation to pay a restitution judgment is merely a debt similar to those owed to general creditors. (*Duvall v. McGee, supra,* 375 Md. 476.) In *Sligh v. First Nat. Bank of Holmes County* (Miss. 1997) 704 So.2d 1020, 1029, the Mississippi Supreme Court created a common-law preferred creditor exception to spendthrift trusts for victims of intentional or grossly negligent torts, but this was undone by the Mississippi Legislature five months later when it passed the Mississippi Family Trust Preservation Act of 1998. (See Miss. Code Ann. § 91-9-503 (2003); *Duvall v. McGee, supra,* 826 A.2d 416 at pp. 427–429.)

[14] Apparently, the *Ventura County DCSS* court did not find *Grohmann* persuasive under the facts in its case because *Grohmann* did not involve a determination of the good faith of the trustee. (See *Ventura County DCSS, supra,* 117 Cal.App.4th at pp. 153–154; *Grohmann v. Grohmann, supra,* 511 N.W.2d at p. 314.)

## DISPOSITION

The order is affirmed. Each side shall pay its own costs.

Mallano, Acting P. J., and Vogel, J., concurred.