Filed 8/4/21  Phipps v. Venton CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SCOTT PHIPPS, as TRUSTEE<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIANA VENTON,<br><br>Defendant and Appellant. | A162449<br><br>(Alameda County<br>Super. Ct. No. RP20079869) |

Appellant Mariana Venton is a beneficiary of a trust established by her late husband, Robert.[1]  She was receiving about $6,200 per month from the trust.  Respondent Scott Phipps, the trust's trustee, petitioned the trial court to lower Mariana's monthly distribution to $2,500 in the face of dwindling trust assets and in an attempt to maintain some funds for the trust's remainder beneficiaries.  The trial court granted the petition over Mariana's objection.

On appeal, Mariana argues that the trial court's ruling was an abuse of discretion because it defeated the purpose of the trust.  We disagree and affirm.

---

[1] Because the couple share the same surname, we refer to them by their first names for purposes of clarity.

1

## I.
### FACTUAL AND PROCEDURAL
### BACKGROUND

Robert and Mariana married in September 2000 after living together since 1983 or 1984. In 1994, Robert established the "Robert William Venton Living Trust," which he amended in an "Amendment to and Restatement" (the Restatement) a few months before his death in November 2004. Respondent Phipps is the trustee. The trust names Mariana as the sole current beneficiary and names Robert's daughter from his first marriage and two grandsons as future remainder beneficiaries.

The Restatement includes a few provisions that are central to this appeal. The fourth paragraph addresses Mariana's living arrangements and provides that "it is my desire that my wife be provided with appropriate living facilities." The Restatement first states that Phipps "shall allow [Mariana] to reside" at their San Lorenzo home. But it then gives Phipps the option to sell the house in the event of Mariana's inability to maintain the home. Upon such a sale, the Restatement states that Phipps "may purchase or rent alternative living facilities to be utilized by [Mariana] for the duration of her life."

The fifth paragraph of the Restatement addresses how the trust's income and principal are to be distributed to Mariana and the remainder beneficiaries: "My Trustee *shall* then pay to [Mariana], during her lifetime[,] the net income from the Trust. My Trustee, in his discretion, *may* also pay to, or for the benefit of, [Mariana], such sums out of [the] Trust principal as my Trustee deems necessary for [Mariana's] health, welfare[,] and maintenance." (Italics added.) Thus, the trustee "shall" pay Mariana the net income but "may" disburse to her the principal. To guide Phipps's discretion in disbursing the principal, the trust directs that "my Trustee shall be guided

by my desire that my wife be provided for as herein set forth and that my daughter and grandsons receive as much of the Trust principal as feasible upon termination of the Trust." The sixth paragraph of the Restatement provides that after Robert and Mariana's deaths, the Trustee shall "divide the Trust assets equally between my daughter" and two grandsons.

Mariana lived in the San Lorenzo home from the time of her husband's death until 2015, when the property was sold. At the time of the sale, the trust assets totaled about $600,000. In 2016 and 2017, Mariana received about $3,600 per month. She suffered a stroke in April 2017, and since January 2018, Phipps has paid as rent the monthly cost for her to live at an independent-living facility in Livermore. These monthly payments have averaged around $6,200, and the costs are expected to increase in the near future. Mariana is now 92 years old and has not fully recovered from the stroke.

If distributions to Mariana continue at the current rate, the trust will likely run out of money some time in 2022. Phipps tried to contact Mariana multiple times in early 2020 to discuss the situation and to inquire into what other resources she had for support, but he did not receive a response. In August 2020, Phipps sent a letter, through his attorney, to Mariana and the remainder beneficiaries. The letter stated, "On the one hand, [the trust provisions] suggest that the Trustee should pay for Ms. Venton's rent and support. On the other hand, they give the Trustee discretion to determine what support payments are necessary, and they also direct the Trustee to preserve principal for the Trustor Mr. Venton's daughter and grandson[s]."

Phipps sent a Notice of Proposed Action to Mariana and the remainder beneficiaries to set the monthly distributions to Mariana at $2,500 per month. Two of the remainder beneficiaries consented, and Mariana objected.

3

But the parties did not communicate with one another or contact Phipps to discuss the matter. In April 2021, Phipps filed a petition for an order authorizing him to take his proposed action. (Prob. Code, §§ 16503, subd. (c) [proposed action], 17200, subd. (a)(6) [instructions].) Mariana filed an opposition and a declaration stating her husband assured her she would not have to worry about her living expenses for the rest of her life. At the hearing, Mariana argued that her husband "wanted to provide housing for [her] and the remainder people came second." She also argued that because of her stroke, the cost of rent at her independent-living facility is necessary.

The trial court focused on the trust's use of the terms "may" and "shall." While the provision governing the house uses "shall," the provisions governing rent payments, in the event of the house's sale, use "may." The trial court found the provisions to be unambiguous, although it recognized that the trust set forth "inconsistent . . . values that could come in conflict and they are in conflict." The court interpreted the trust to mean that Phipps may consider whatever information he deems appropriate, and may decide to pay nothing toward Mariana's rent. The court stated, "[M]y bottom line is . . . that a trustee has a range of discretion and [the court's] job is to step in only if there's an abuse of that discretion."

The trial court authorized Phipps's proposed action of reducing Mariana's rent to $2,500 per month. Mariana appealed, and this court granted her request for calendar preference.

## II.
### DISCUSSION

*A.*     *The Trial Court Did Not Abuse Its Discretion in Ruling that Phipps Was Authorized to Reduce Mariana's Rent Payments.*

1. General Principles and the Standard of Review.

"A trustee's discretion is not unlimited . . . .  If a trustee abuses [his or] her discretion, a court may order that trustee to do things differently.  But whether a trustee exercises [his or] her discretion appropriately or abusively is measured by how this exercise conforms to the trustor's intent." (*Young v. McCoy* (2007) 147 Cal.App.4th 1078, 1087 (*Young*).)  "[T]he basic inquiry, whenever the exercise of a trustee's discretion, absolute or otherwise, is challenged, is always whether the trustee acted in the state of mind contemplated by the trustor." (*Estate of Greenleaf* (1951) 101 Cal.App.2d 658, 662 (*Greenleaf*).)  As such, a trustee's determination not to make future payment cannot be an abuse of discretion if it is clearly in keeping with the trustor's intent.  (*Young*, at p. 1087.)  The trustor's intent is " ' "ascertained from the whole of the trust instrument, not just separate parts of it." ' " (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 944 (*Cairns*).)

The actions of the trustee are presumed to be in good faith.  (*Estate of Ferrall* (1953) 41 Cal.2d 166, 177.)  The burden is on the party challenging the action to show otherwise.  (*Estate of Crisler* (1950) 97 Cal.App.2d 198, 202.)  "It is the general rule that if the power of the trustee is discretionary, and the trustee is fairly employing his [or her] judgment . . . the court will not control his [or her] action merely because it disagrees with him [or her], but it must find some abuse of discretion or bad faith before it will interfere." (*Greenleaf, supra,* 101 Cal.App.2d at p. 662.)

Both parties acknowledge that we review the trial court's ruling for an abuse of discretion.  (*Manson v. Shephard* (2010) 188 Cal.App.4th 1244,

5

1258.)  However, abuse of discretion " 'is not a unified standard . . . .  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of law to the facts is reversible only if arbitrary and capricious.' " (*Id.* at p. 1259.)  " 'The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein.' " (*Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 561.)  "If the parties do not dispute the facts," as is the case here, the appellate court independently construes the trust instrument.  (*Ibid.*)  As a result, "[w]e review the trust de novo, considering the circumstances under which the document was made in order to place ourselves in the position of the trustor to interpret the document." (*McIndoe v. Olivos* (2005) 132 Cal.App.4th 483, 487.)

> 2. The Trial Court Properly Interpreted the Trust and Did Not Disregard Its Purpose.

Mariana argues that the trial court abused its discretion by essentially modifying the terms of the trust to defeat its primary purpose to provide for her necessary and appropriate care.  She contends that reducing her monthly payment to $2,500 conflicts with that purpose.  But we agree with the trial court that the trust's "necessary and appropriate" directive is subject to a permissive "may" and not a mandatory "shall."

As the trial court found, the trust uses the terms "shall" and "may" to guide the bounds of Phipps's discretion.  It provides that the "Trustee *shall* allow [Mariana] to reside in the [San Lorenzo] property." (Italics added.)  By contrast, in paying for rent, the "Trustee *may* . . . rent alternative living facilities." (Italics added.)  Further, the trust gives Phipps discretion in that

6

he "*may* also pay . . . sums out of [the] Trust principal as [he] deems necessary for [Mariana's] health, welfare and maintenance." (Italics added.)

We agree with the trial court that the provisions governed by "shall" are mandatory on Phipps while those that are governed by "may" are not. Thus, the trust does not impose on Phipps a mandatory duty to disburse the principal to pay for Mariana's rent or for her health, welfare, and maintenance. In fact, the trust expressly recognizes dual purposes in deciding principal payments: "In making the decision to disburse principal, my Trustee shall be guided by my desire that my wife be provided for as herein set forth *and that my daughter and grandsons receive as much of the Trust principal as feasible* upon termination of the Trust." (Italics added.) Mariana's argument that lowering her monthly payment alters the primary purpose of the trust focuses on one of the trust's purposes, but it ignores the other. (See *Cairns*, *supra*, 188 Cal.App.4th at p. 944 [intent of trustor is ascertained from the whole of the trust].)

Mariana also argues that reducing her monthly payment is contrary to Robert's intent that she "be provided with appropriate living facilities . . . for the duration of her life." She contends that her rent should not be reduced because the remainder persons come second. But as the trial court recognized, the trust's dual purposes set forth "inconsistent" values but requires Phipps to consider not only Mariana but also what will be left over for the remainder beneficiaries. We cannot say that the trial court abused its discretion in ruling that Phipps, in balancing these dual purposes, could lower Mariana's monthly payments. (See *Young*, *supra*, 147 Cal.App.4th at p. 1087.)

Mariana also argues that the trial court erred by capping Mariana's support payments to the supposed rental value of the San Lorenzo house.

7

But the trial court's order places no such cap on the payments. The court's order provides that "the Trustee is authorized[,] but not required, in the Trustee's discretion, to reduce payments from Trust principal to [Mariana] to $0 to preserve principal for the remainder beneficiaries." During the hearing, the court considered the rental value of the San Lorenzo property in ascertaining what monthly disbursement to Mariana would be reasonable, but it did not order Phipps to disburse any specific amount.

Finally, we reject Mariana's argument that Phipps intimated that Mariana has sufficient means to pay for the full rent at her living facility because she declined to respond to an inquiry from him about the other resources she had at her disposal. Phipps explained, "I tried to contact Ms. Venton multiple times in early 2020 . . . . I wanted to ask what other resources she had for her support." Phipps believed "it was reasonable to inquire what other resources Ms. Venton had available to her" because the trust has limited resources and does not specify the factors Phipps is to consider in determining the amount of support payments. The trial court acknowledged that the term "necessary" does not impose a means test, and we agree. We also agree, however, that Phipps was acting within his discretion to attempt to determine what amount of monthly disbursement to Mariana would be adequate to support her while also trying to maintain some of the principal for the remainder beneficiaries.

III.
DISPOSITION

The trial court's order granting the petition for order to take proposed action and for instructions is affirmed.

8

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.


*Phipps v. Venton*  A162449

9